63  799
f63  809
63  799
76  204

THE NATIONAL COUNCIL OF THE KNIGHTS AND LADIES OF SECURITY v. H. M. PHILLIPS, *as Treasurer, etc.*

No. 12,640. (66 Pac. 1011.)

SYLLABUS BY THE COURT.

BENEVOLENT ASSOCIATION—*Exemption from Taxation.* An association conducted for the mutual benefit of its members, and for the purpose of providing a fund, by the contribution of stated dues from such members, for the payment of a special amount upon the death of a member to a beneficiary named by him, is not such a benevolent association, within the meaning of the laws of the state, as is entitled to have its property exempted from taxation.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed December 7, 1901. Division two. Affirmed.

*D. C. Tillotson,* for plaintiff in error.

*Galen Nichols,* county attorney, for defendants in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: Plaintiff in error brought its action against the defendants in error in the district court of Shawnee county for the purpose of enjoining the collection of a tax on certain real estate situated in the city of Topeka. This real estate consists of a three-story brick business building, of the value of $47,000, the first floor of which is rented for business purposes for $280 per month, and the second and third floors are used exclusively by the plaintiff for offices for the conduct of its business, and for lodge rooms of the association, of the rental value of $125 per month. This building was purchased with means which had been accumulated in a fund known to its constitution and by-laws as a "reserve fund," and the rents de-

rived therefrom serve to augment this fund. The taxing officers of the city of Topeka and of Shawnee county had regularly proceeded to levy taxes on this building for the year 1900, and the defendants, who are the county treasurer and board of county commissioners, were proceeding to collect the same when stopped by this action. The district court, upon final hearing, dissolved the injunction and held the property subject to taxation. Of this order plaintiff now complains.

It is agreed that "plaintiff is such an organization as is shown by its constitution and by-laws, found in the record." Its objects, as therein stated, are as follows :

"1. To unite both sexes in a fraternal beneficiary society for the sole benefit of its members and their beneficiaries, and not for profit.

"2. The promotion of benevolence, charity, social culture, mental improvement, education, care for the sick and needy, to aid members in obtaining employment, to assist each other in business, to provide a beneficiary fund, payable at death, as the member may direct, in sums from $500 to $3000, or a part thereof in case of partial or complete disability of the member.

"3. This order shall have a lodge system, with ritualistic form of work and representative form of government.

"4. The members of this order shall be united into subordinate councils under the jurisdiction and control of the national council."

Provision is made for a national council thereof, for the issuance of beneficiary certificates by it in sums varying from $500 to $3000, and for the creation of a reserve fund with which to pay death claims in certain cases. Membership is divided into two classes, beneficiary and social. No persons are admitted to

beneficiary membership except those who are able to
earn a livelihood and are in such sound physical con-
dition as will enable them to pass the medical exami-
nation which is provided.   Provision is made for the
election of officers, their duties defined, and their com-
pensation fixed.   An executive committee manages
the affairs of the association, borrowing money when
needed, investing its reserve fund in bonds and mort-
gages, and issuing all orders on the treasurer.   A law
committee takes charge of all legal business of the
order.   To the beneficiary members are issued certifi-
cates which provide in part as follows :

"This certificate, issued by the national council of
the Knights and Ladies of Security :

"Witnesseth, that ——, a member of —— council
No. ——, located at ——, state of ——, is hereby
admitted to beneficiary membership in the order, and
it is hereby agreed that, in consideration of the prem-
ises and in accordance with and under the provisions
of the laws of the order, he is entitled to all of the
rights, benefits and privileges of membership therein,
and that at —— death, —— having complied with all
of the provisions of the constitution and by-laws of
the order, and being at the time of —— death a mem-
ber in good standing, the said national council agrees
to pay to ——, bearing the relation to —— of ——,
the sum of $——.

"And it is further provided and agreed, by and be-
tween the national council and the member, that, for
the purpose of creating and maintaining a reserve fund,
on the death of the said ——, the national council
shall retain fifty dollars of each one thousand dollars
of this certificate, less one dollar for each year this
certificate shall have remained in force."

The rate of assessment is also fixed, payable monthly.
Only those persons who are designated as "bene-
ficiary members" are permitted to participate in the
financial benefits of the association, and these only

51—63 KAN.

when they have paid the assessments in accordance
with the by-laws. The sole purpose of the organiza-
tion, aside from the social benefits which may be
derived from the association of its members, is to pro-
vide for the beneficiary mentioned in the certificate,
by payment of the amount therein named upon the
death of the member, and these beneficiaries are
limited by the by-laws to "families, heirs, blood
relations, affianced husband or affianced wife, or to
persons dependent upon the member." In short, the
object of the order is to provide by stated contribu-
tions from its members a fund from which to pay to
those designated in their certificates as beneficiaries,
upon the death of the member, the sum therein stated.

Exemption from taxation is claimed under para-
graph 3 of section 7504, General Statutes of 1901,
which reads as follows :

"That the property described in this section, to the
extent herein limited, shall be exempt from taxation :
. . . All buildings and parts of buildings belong-
ing to . . . benevolent associations, used exclu-
sively for . . . benevolent purposes."

The contention of the plaintiff is that this a benevo-
lent association under the meaning of this act. If
plaintiff can be said to be a benevolent association
within the meaning of this statute, and if the build-
ing above described, or any portion thereof, is used
exclusively for benevolent purposes, then it claims
that it is entitled to be exempted from taxation to the
extent, at least, of the value of the portion thereof so
exclusively used. We are thus brought to the ques-
tion whether an association formed for the purposes
and conducted in the manner indicated by the by-laws
above summarized is a benevolent association within
the meaning of this act.

Plaintiff classes itself as a fraternal beneficiary society, but it is conducted for the sole benefit of its members.   Among its objects are the promotion of benevolence, charity, social culture, mental improvement, education, care for the sick and needy.   All of these purposes are confined to its members, and dependent upon the payment by them of the assessments as required by the by-laws.   Beneficiary members get what is paid for and nothing more.   If they cease to pay they cease to receive.   Members continue to pay for the benefit of another, not because moved thereto by charitable or benevolent impulse, but because they expect that, upon the happening of their death, those whom they are interested in or are bound by law or the ties of affection to provide for will be cared for — a *quid pro quo*.   Is this benevolence, and is the organization by and through which it acts a benevolent institution?

In considering the question, we shall use the term "benevolence" as synonymous with "charity."  These terms are connected and so used in our constitution relative to exemption for taxation, where the provision is that "all property used exclusively for  .  .  . benevolent and charitable purposes  .  .  .   shall be exempted from taxation."  (Const. art. 11, § 1.)   We must, also, in considering the terms, apply the strict rules of construction.   Section 7502, General Statutes of 1901, provides "that all property in this state, real and personal, not expressly exempt therefrom, shall be subject to taxation in the manner prescribed in this act."  It is a rule universally recognized that laws exempting property from taxation are to be strictly construed, and that the claimant of such exemption must establish, beyond a reasonable doubt, his right thereto.   This rule is stated in *Ottawa Uni-*

*versity v. Comm'rs of Franklin Co.*, 48 Kan. 464, 29 Pac. 599, as follows:

"Under our statutes, all property in the state, real and personal, not expressly exempt therefrom, is subject to taxation, and any person claiming immunity from the common burdens of taxation, which should rest equally upon all, must bring himself clearly within the exemption; and hence, it is held that a provision creating an exemption should be strictly construed."

The synonyms of benevolence, as found in our standard dictionaries, are "almsgiving," "beneficence," "benignancy," "bounty," "charity," "generosity," etc., all implying a condition of mind and disposition prompting to disinterested action. It is altruistic in its character, and not selfish. It seeks not its own interests, but those of others. What it does it does not because it is compelled to do, but because moved thereto by unselfish motives.

May we say that the plaintiff association is such an institution? Its beneficiaries receive from it, not on the basis of their needs, but on the basis of payments made in their behalf. Its payments are not voluntary. Courts are continually called upon to, and do, enforce its contracts. No sick or needy ones are admitted to beneficiary membership. What the association disburses is denominated payment. Payment is made because the obligation has been created by an antecedent payment made to it. It is so much benefit paid because of so much and so many assessments paid. Its benevolence is purely of a commercial character. It does not go out to seek the needy, but invites only the able-bodied and healthy. Payments are made to it, not because of a charitable motive, but for the purpose of providing for those who are dependent upon the member, or are for some special reasons near and

dear to him.   The same motive actuates us all in engaging in the ordinary business of our lives.   One might, with almost as much reason, claim exemption for his stock of goods, because they are the means by which he is making a living for his family and expects to leave them provided for at his death.   To provide for one's own is not charity or benevolence; it is duty.   The grossest form of selfishness may rest upon the natural affections.   In our minds, these characteristics exclude the plaintiff in error most positively from the list of those institutions exempted from taxation by the words of the statute.

In *Cunnack v. Edwards*, 2 Chan. Div. Rep., being the reports of the supreme court of.judicature of England for the year 1896, the court, speaking of an association like the plaintiff, at page 681 said:

"It is contended, however, that this association may be regarded as a charity.   Wide as has been the meaning given to the word 'charity,'  .  .  .   a width of interpretation which I confess has seemed to me in some cases extravagant, I do not think that a perfectly businesslike arrangement like this, in which a number of persons associate together and contribute funds to provide for their own widows, has ever been regarded as charity.  .  .  .   It cannot be pretended that a wealthy widow could not be entitled to claim her annuity equally with a poor one.   If this be a charitable institution, it would be difficult to contend that every life insurance company did not fall under the same category."

In *Bangor v. Masonic Lodge*, 73 Me. 428, 40 Am. Rep. 369, the syllabus reads as follows:

"The distinctive characteristics of a public charity are that its funds are derived from gifts and devises, and not from fees, dues, and assessments, and that it is not confined to privileged individuals, but is open to the indefinite public."

The books, almost without exception, treat associations like the plaintiff as of the character of mutual life insurance companies, and not as charities. The fact that those identical persons who pay to it do not receive back from it does not destroy its character as such.

In *Farmer v. The State*, 69 Tex. 561, 7 S. W. 220, the court said of an association which announced in its charter that its object was to provide for its members during life and for their families after death, which required of its members, for the accomplishment of this purpose, a payment of money in instalments, and required an examination of the members by a physician as a prerequisite to admission, and for forfeiture of membership by reason of non-payment of assessments:

"The contract had all the elements of a life insurance policy, and though it may be entered into for benevolent purposes, the corporation cannot legally exist unless incorporated in accordance with the laws of the state regulating the incorporation of insurance companies."

In *The State, ex rel. Graham et al., v. Miller et al.*, 66 Iowa, 34, 23 N. W. 241, the court held that the Ancient Order of United Workmen, an association of the same character, practically, as the plaintiff in this case, was a life insurance company, and recognized its fraternal character as merely an incident to its many purposes. In *Robinson v. Templar Lodge, I. O. O. F.*, 117 Cal. 370, 49 Pac. 170, 59 Am. St. Rep. 193, the court said of an association similar in character and regulations to that of plaintiff, concerning payments to be made to it:

"These benefits are not charities in the strict sense; they are dues, which the society became obliged to pay in certain events. It is a matter of right and not

of grace.   A consideration is paid, and the lodge reserves no right to withhold payments when the conditions arise.''

For a discussion of the character of an association like that of plaintiff, as to whether they partake of the character of benevolent or charitable institutions or that of life insurance companies, see *Mutual Benefit Association v. Stapp*, 77 Tex. 517, 14 S. W. 168, 19 Am. St. Rep. 781, and cases there cited; *Chartrand v. Brace*, 16 Colo. 195, 26 Pac. 152, 12 L. R. A. 209, 25 Am. St. Rep. 241; *The State, ex rel., v. Bankers etc. Association*, 23 Kan. 499; *Endowment and Benevolent Association v. The State*, 35 id. 253, 10 Pac. 872; *The Elkhart Mutual Aid, Benevolent and Relief Association v. Houghton*, 98 Ind. 149; *Supreme Commandery, Knights Golden Rule, v. Ainworth*, 71 Ala. 443, 46 Am. Rep. 332; Nibl. Ben. Soc. & Acc. Ins. 244, 255; 2 May, Ins. § 550a (3d ed.)

The fact that section 3543, General Statutes of 1901, exempts this class of associations from supervision by the insurance department of the state does not change their character, as indicated in this discussion; nor does the fact that beneficiary certificates issued by them are exempt from taxation, under the provisions of section 3463, affect their nature.   That the plaintiff in its constitution denominates itself a beneficiary society makes for nothing.   A declaration of this sort does not change its real character; that must be determined from the nature of its constitution and by-laws. It is not the name, but the nature, that determines. (*Robinson v. Templar Lodge*, supra.)

The court below found that the plaintiff was a secret benevolent association, but it did not find that it was such a benevolent association as could hold its property exempt from taxation under the statute.   In

effect, the court found that it was not such an associa-
tion, for it rendered judgment against it.    But the
court's knowledge was only such as we possess, for it
was agreed that the plaintiff is such an association as
is shown by its constitution and by-laws, which are
incorporated in the record here.    As said above, it is
the nature, and not the name, which determines the
character.

We do not think the plaintiff is entitled to the ex-
emption from taxation which it seeks.    The judgment
of the court below will be affirmed.

GREENE, POLLOCK, JJ., concurring.