# JULY TERM, 1907.

### PRESENT:

Hon. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
Hon. ROUSSEAU A. BURCH,
Hon. HENRY F. MASON,
Hon. CLARK A. SMITH,
Hon. SILAS W. PORTER,        } JUSTICES.
Hon. CHARLES B. GRAVES,
Hon. ALFRED W. BENSON,*

ALVIN BOMAN v. THE BANKERS' UNION OF THE WORLD.

No. 14,897.        (91 Pac. 49.)

#### SYLLABUS BY THE COURT.

FRATERNAL INSURANCE—*Change of By-laws—Effect on Bene-
ficiary—Waiver of Right to Enforce.*  The defendant in error
was incorporated as a mutual life-insurance association, and
issued a joint certificate to Boman and wife by the terms of
which, and the by-laws which were made a part of the con-
tract, the association agreed to pay the survivor, upon proof
of the death of the other, an indemnity of $1000, subject to
certain deductions provided for by a by-law then in force.
Subsequently the association passed a new by-law, which, if
applicable to this· certificate, would greatly reduce the in-
demnity.   Neither Boman nor his wife· had any notice or
knowledge of the new by-law during her lifetime, but they con-
tinued for many months after the new by-law was passed to
pay the monthly assessments at the rate required at the
time their certificate was issued, and the association received
such payments without objecting to their sufficiency.   The
wife died, and Boman made proof of the death and demanded
the indemnity.   The association offered him the amount he
would be entitled to under the new by-law, but less than one-
third the amount to which he would be entitled under the
former by-law.   *Held,* although Boman and wife may have
agreed in the acceptance of the certificate to be bound by
subsequently enacted by-laws, the association waived the en-
forcement of the new by-law and is estopped from. asserting
it against Boman.

*Appointed by Governor EDWARD W. HOCH, on August 1, 1907, to suc-
ceed the Honorable ADRIAN L. GREENE, who died July 28, 1907.

Error from Allen district court; OSCAR FOUST, judge. Opinion filed July 5, 1907.   Modified.

*Ewing, Gard & Gard,* for plaintiff in error.
*Austin & Hungate,* for defendant in error.

The opinion of the court was delivered by

SMITH, J.: This action was commenced in the district court of Allen county by Alvin Boman to recover, as the surviving beneficiary, his wife having died, the indemnity on a joint policy of life-insurance issued to them during her lifetime.   The policy on its face purports to afford indemnity to the survivor in the sum of $1000, payable ninety days after the receipt of proof of the death of the other spouse.   It is specified in the policy that the payment of all benefits under the policy shall be governed by the provisions of the by-laws, but there is no agreement authorizing any change in the by-laws or any agreement to abide by any subsequent change therein which may affect the amount of the indemnity.   The policy reads:

"This certifies that Alvin Boman and Helena Boman, having each complied with all of the requirements of the order, and in consideration of the payments of premiums and fees necessary to be paid in advance herein, are members of Jeddo lodge No. 1073 of the Bankers' Union of the World, located at Humboldt, in the state of Kansas, and they are each entitled to all the rights, privileges and benefits of membership therein.

"That upon receipt by the supreme lodge at its office in the city of Omaha, Neb., of satisfactory proofs of the death of either of said members while in good standing in this order, and within ninety days after the receipt of such proofs, there will be paid to the surviving member,   .   .   .   upon surrender and cancelation of this policy, the sum of one thousand dollars. The payment of all benefits under this policy shall be governed by the provisions of the laws pertaining to this class of policies, which provisions, together with the statements made by the insured in their application for membership and the statements certified by the

insured to the medical examiner, are hereby made a part of this contract.

"This policy is issued to, and accepted by, both of said members upon the terms and subject to the conditions set forth in the constitution and by-laws of this union, and subject to the conditions and stipulations on the reverse side hereof, all of which are hereby made a part of this contract, as fully as if they were recited at length over the signatures hereto affixed."

The only conditions or stipulations on the reverse side of the policy which can affect the questions here involved are:

"DEATH BENEFIT.

"Within ninety days after receipt and approval of satisfactory proofs of the death of either of the said members there shall be paid to the surviving member, if living, otherwise to the legal heirs of such surviving member, upon the surrender and cancelation of this policy, such balance, if any, of the amount payable under this policy, if such remains unpaid to the said member; payable at the supreme office at Omaha, Neb., upon the surrender and cancelation of this policy.

"Should either of said members die before having lived out their expectancy of life, based upon age at time of entry, according to the American experience tables of mortality, there shall be deducted from the death benefit payable hereunder a sum equal to the amount of one payment (at the rate of the member whose death shall first occur, from which the joint rate was fixed) for each month of the unexpired period of such life expectancy with four per cent. on the unpaid balance of such sum. Accident and disability payments hereunder shall be subject to proportionate deductions. All deduction, as provided above, shall remain in the benefit fund until transferred to the reserve fund, in accordance with the constitution and by-laws of the order."

From this it will be seen that there is here no provision for a subsequent fixing of the amount of the deduction in case of the death of either of the assured before the expiration of his or her life expectancy. But the reduction is to be determined from the amount of one payment at the rate of the member whose death

shall first occur, from which the joint rate *was* fixed.

It is contended that the following stipulation in the application for membership binds the members not only to comply with any by-laws which may be enacted but also authorizes the corporation to change or reduce the benefit:

"I agree that the maintenance of my membership in the lodge of the Bankers' Union of the World and the compliance on my part with the constitution, by-laws, rules, regulations and requirements which are now in force or may hereafter be enacted by the said Bankers' Union of the World, is the express condition upon which I am entitled to enjoy the rights, benefits and privileges of membership in the beneficiary department of this order."

Certain it is that the by-laws were explicit on this subject. Division 9 of section F thereof reads:

"Every certificate of insurance heretofore issued, or that may be hereafter issued, shall be subject to, governed by, and construed in accordance with, the constitution and by-laws of this order or any amendments thereto that may be hereafter adopted, and all claims shall be settled in accordance with the various provisions thereof as the same may be in force at the time such claim arose."

Also, division 12 of section B provides that "the constitution may be altered or amended by the supreme lodge at any regular or special meeting."

The case was tried to the court upon an agreed statement of facts. The policy and all the pertinent portions of the by-laws necessary to an understanding of such agreed statement are above set forth. The agreed statement of facts is as follows:

"In addition to the facts admitted in the pleadings, and without waiving any such admissions, now, to wit, it is hereby stipulated and agreed that the following facts be and are hereby admitted herein:

"(1) That the defendant is now, and was at all times mentioned in plaintiff's petition, a fraternal beneficiary association organized and incorporated under the laws of the state of Nebraska, and authorized to do, and do-

ing, business as such fraternal beneficiary association in the state of Kansas.

"(2) That on or about the 31st day of December, 1901, said defendant duly executed and delivered to said plaintiff and one Helena Boman, now deceased, who was at said time and thereafter the wife of plaintiff, a certain joint policy of insurance, as provided by the constitution and by-laws of the defendant in force at that time, granting therein benefits or indemnity in case of death of one of said parties to the surviving one, the sum of $1000; a copy of which policy is attached to plaintiff's petition, marked 'Exhibit A,' and which is referred to and made a part of this agreed statement of facts.

"(3) That prior to the execution and delivery of said policy, said plaintiff and said Helena Boman each separately made application for the same; copies of which applications are attached to the answer of defendant herein, marked 'Exhibit A' thereof, and are here referred to as a part of this agreed statement of facts.

"(4) That at the time of the issuance of the said policy of insurance, and prior thereto, and thereafter, said plaintiff and his said wife complied with the constitution and by-laws of said defendant in force at the time of the execution of the said policy, and with the terms of said policy. A copy of which constitution and by-laws is attached to defendant's answer herein and marked 'Exhibit B,' which is here referred to and made a part of this agreed statement of facts.

"(5) That on or about the 13th day of January, 1904, said Helena Boman died intestate, leaving surviving her this plaintiff, who was and is the sole surviving beneficiary under the said policy of insurance.

"(6) That thereafter, on or about the 15th day of March, 1904, said plaintiff submitted to said defendant due and proper proof of the death of the said Helena Boman under said policy; and thereafter, on the 16th day of August, 1904, the same was approved by the board of directors of the defendant and the said policy ordered paid within ninety (90) days thereafter, and that the sum payable under the terms of said policy became due and payable to the said Alvin Boman at the expiration of the said ninety (90) days from said date.

"(7) The total amount paid into the mortuary fund of the defendant by said plaintiff and said Helena Bo-

man, during their membership, under said policy, was the sum of $25.58.

"(8) That subsequently an amended and substituted constitution and by-laws of the defendant was adopted by the supreme lodge of said defendant association, and duly filed with the auditor of public accounts of the state of Nebraska, December 19, 1902; a copy of which is attached to defendant's answer, marked 'Exhibit C,' and is here referred to as a part of this agreed statement of facts.

"(9) That by the laws of the state of Nebraska, under and by virtue of which the defendant association was organized and incorporated, it is provided that amendments to the constitution and by-laws of the defendant should take effect and be in force after the same have been filed with the auditor of public accounts of the state of Nebraska, who is the officer entrusted with the supervision of such association.

"(10) That said Helena Boman was 27 years of age and said plaintiff was 33 years of age at the date of the issuance of the said policy of insurance; and that the expectancy of life of said Helena Boman at her age, at the date of her entry into said order, to wit, date of issuance of said policy, according to the American experience table of mortality, was 37.4 years.

"(11) That said Helena Boman, while living, and said plaintiff, at no time until after the death of his said wife, Helena Boman, had any notice or knowledge of the said amended and substituted constitution and by-laws of 1902, referred to in paragraph 8 of this agreed statement of facts.

"(12) That the premium rates therein provided for were never enforced or attempted to be enforced as against him or his said deceased wife; and that all payments of premiums made by the plaintiff or said Helena Boman were at the rates, and all transactions had with reference to said beneficiary certificate, were in accordance with the constitution and by-laws of the defendant of 1901, referred to in paragraph 4 of this agreed statement of facts, and never at any time was any reference made to the amended and substituted constitution and by-laws of 1902; and that all payments of premiums made by said plaintiff and said Helena Boman were accepted by said defendant without objection or question concerning their sufficiency.

"(13) That computing the amount due under said

policy according to the constitution and by-laws of 1901 or the terms of said policy the amount would be $739.65, with interest at six per cent. per annum from November 16, 1904.

"(14) That computing the amount due under said policy according to the constitution and by-laws of 1902 the amount due would be the sum of $224.25, with interest at six per cent. per annum from November 16, 1904."

The writer is inclined, under the terms of the policy and the constitution and by-laws of the association, to deny the right of the corporation to diminish the indemnity by the enactment of a by-law subsequent to the issuance of the policy and without the consent of the assured. This association is an insurance corporation under the decision in *National Council v. Shawnee County,* 63 Kan. 799, 806, 66 Pac. 1011. It was held in *Miller v. National Council,* 69 Kan. 234, 76 Pac. 830, that where a member in such an association "agreed to be bound by subsequently enacted by-laws, he is bound by a new law which changes and increases his rate of monthly assessment, if it be reasonable and necessary to the accomplishment of the purposes of the association" (syllabus) ; still, it would seem repugnant to every idea of right that one party to a contract could, by a by-law which increases the benefit thereof to itself, entirely wipe out or in the least diminish the benefits to the other party thereto. If this association could, as it claims, by increasing the monthly assessments increase the deductions from the face of the policy, and thus decrease the indemnity by over two-thirds the value thereof, it could by only a slight additional increase wipe out the entire indemnity. By the same act it would convey more money to its coffers than the assured contracted to pay for carrying the risk. As the assured grew older, by enacting new by-laws the corporation could increase its demands and keep the indemnity at *nil.* Without deciding whether the corporation has this power, we are agreed that it is

not entitled to enforce the new by-law against Boman.

It appears by the agreed statement of facts that neither Boman nor his wife, prior to her death, had any notice or knowledge of the new by-law; that they paid all the assessments according to the rate prescribed by the by-laws in force at the time of the issuance of their policy; and that the association neither enforced nor attempted to enforce the new rate as to them, but received all their payments without objection or question as to the sufficiency thereof. If the association had demanded payment of assessments under the new rate, it would have been notice to the assured of the change in the by-laws, and they could at least have exercised their discretion to continue to pay at the new rate or to drop out by non-payment. If there be ambiguity under the contract, consisting of the certificate, the constitution and the by-laws, as to whether the new by-law applied to the Bomans, the action of the parties would amount to a mutual construction thereof adversely to the claims of the association, and the court should adopt such construction, or at least give it great weight. If there be no such ambiguity or uncertainty, still it must be held that the association, by keeping the assured in ignorance of the existence of the new by-law and by accepting payments without objection at the old rate, waived the new law as to them and is now estopped from asserting it against the beneficiary. (*Assurance Co. v. Bradford,* 60 Kan. 82, 55 Pac. 335; *Wyatt v. Irrigation Co.,* 18 Colo. 298, 33 Pac. 144, 36 Am. St. Rep. 280; *Williamson v. Association,* 54 S. C. 582, 32 S. E. 765, 71 Am. St. Rep. 822; *Modern Woodmen v. Breckenridge,* 75 Kan. 373, 89 Pac. 661.)

The case is remanded, with instructions to modify the judgment by increasing the same in favor of the plaintiff to the aggregate amount of $739.65, with interest at six per cent. thereon from November 16, 1904,

and costs. The costs of this court will be taxed to the defendant.

GREENE, MASON, PORTER, GRAVES, JJ., concurring.

JOHNSTON, C. J. (concurring specially) : I concur in holding that there was a waiver of the right to enforce the by-law and in the theory of estoppel, but not in all that is said in the opinion.

BURCH, J. (concurring specially) : I concur in the result.