WILBER LEE HART, *Appellee,* v. THE LIFE & ANNUITY ASSOCIATION, *Appellant.*

No. 17,402.

SYLLABUS BY THE COURT.

1. BENEFICIARY SOCIETIES—*Certificate—Amendment to By-laws —Old Certificates Not Affected Thereby.* Before the passage of the act relating to fraternal beneficiary societies (Gen. Stat. 1909, §§ 4303-4318) an association of that character in accordance with its by-laws issued a beneficiary certificate; the by-laws were amended two years afterward providing for the issuance of certificates upon a plan less favorable to members and beneficiaries, but making no reference to or provision for certificates then outstanding, and the association continued after such amendments as it had done before to accept payments upon one of the old certificates, according to its terms, without objection or condition, until it became fully paid up and the holder became entitled according to its provisions to a new paid-up certificate. Eighteen months after the payments had been so completed the association for the first time adopted a by-law providing a new plan for the old outstanding certificates, placing them in a separate class, and materially reducing the benefits stipulated for therein. It is *held* that the association is, upon these facts, estopped from making such changes, and that the holder of such a certificate

who has fully performed the contract on his part is entitled to a paid-up certificate according to the terms specified in the one so held and the by-laws in force when it was issued, although it was issued subject to amendments that might be thereafter made.

2. ——— *Action on Certificate—Not Barred by Delay.* Upon the facts stated in the preceding paragraph the certificate holder is not precluded from maintaining his action because of delay in commencing it.

3. ——— *Certificate — Contract — Enforcement.* Although the plan of benefits provided by the by-laws of a fraternal beneficiary society is afterwards found to be impracticable, the contract contained in the certificates issued in accordance with the original plan is not unconscionable so that a court of equity should refuse to enforce it in a suit brought by a holder who has made all payments due thereon, which have been accepted without objection or condition.

4. MUTUAL INSURANCE COMPANIES—*Statute—Application.* While the statute relating to mutual insurance companies was in some respects applicable to certain mutual benefit associations engaged in the business of insurance before the passage of the act relating specifically to such societies, still the former act did not apply to the defendant association, which operated under the lodge system, under the supervision of a grand or supreme lodge. (Gen. Stat. 1901, § 3543.)

Appeal from Brown district court. Opinion filed January 6, 1912. Affirmed.

*A. M. Harvey, F. M. Pearl,* and *W. F. Means,* for the appellant.

*Clad Hamilton,* and *Clay Hamilton,* for the appellee.

The opinion of the court was delivered by

BENSON, J.: The judgment appealed from was rendered upon the petition and the plaintiff's evidence; an objection to evidence under the answer was sustained because it was held to be insufficient.

The suit is to compel the association to issue a paid-up certificate according to the terms of the certificate, issued when the appellee was admitted to membership, and the by-laws then in force.

The appellant is a fraternal beneficiary association, at present operating under the provisions of article 11 of chapter 55 of the General Statutes of 1909 (Gen. Stat. 1909, §§ 4303-4318), relating to insurance. It was originally organized in September, 1894, before the enactment of the statute, under the name of "The Pyramid Builders," without capital stock, upon the lodge system with ritualistic form of work, for fraternal and benevolent purposes and to provide a fund out of which death benefits and annuities might be paid.

On February 21, 1896, the appellee applied for membership in the order and was accepted. The application recited that it was made "subject to all the limitations and requirements of the Constitution and By-Laws of said order, with amendments made, or that may be hereafter made thereto." A certificate was issued to the applicant, dated March 2, 1896, and thereby he became a member of local Pyramid No. 25. The certificate recites in substance that the member is entitled to designate his beneficiaries to participate in the beneficiary fund to the amount of $100, and an additional $100 for every year the certificate shall remain in force after the first year, not to exceed twenty years or $2000, to be paid to Ada Lee Hart, wife of the member, provided he shall pay $1.25 on or before the first day of each month for 125 consecutive months, and further provided that if the certificate shall remain in force for three years a paid-up certificate will be issued if the insured shall so desire, payable at his death for as many hundred dollars as years the certificate has been in force; that if the certificate shall continue in force for 125 consecutive months and payments have been promptly made a paid-up certificate shall be issued for $1000, to increase in value at the rate of $100 per year, not to exceed twenty years from date of the original certificate, or $2000. If this certificate shall remain valid, and the insured shall live longer than twenty years from its date, he shall be entitled to re-

ceive from the beneficiary fund $100 per year for each additional year he may live, not exceeding twenty years. At his death the benefits so paid to him shall be deducted from the face value of the certificate, which is issued upon the condition that the insured shall comply with the laws, rules and regulations of the order and at his death be in good standing. On December 20, 1896, the name of the order was changed to that given in the title of this action.

The answer stated in substance that in March, 1897, after 140 certificates containing the same provisions as the one issued to the appellee had been issued, it was found that the payments required were not sufficient to carry the insurance provided for and the association then ceased to issue certificates of that form and class, and in September, 1898, the by-laws of the order were amended providing a different plan for payments and benefits, as set out in the answer. The by-laws were again amended in August, 1900, to conform to the statutes of 1898 and 1899, relating to such associations. At the meeting of the supreme council, which is the governing body of the order, in August, 1908, a by-law was adopted placing the certificates issued before the change made in March, 1897, in a separate class, called the Pyramid Builder class, providing for the services of an actuary to determine the amount contributed by the holders of such certificates, how much had been paid by them for death benefits, and what amount of the reserve fund should equitably belong to the Pyramid Builder class, giving credit for interest accumulations; the amount so determined to be set apart as the Pyramid Builder fund for the payment of death benefits arising out of that class—which should no longer be a charge against the general reserve fund. It was further provided that any holder of a Pyramid Builders' certificate might surrender it and take a certificate in the form now (in 1908) written for

21—86 KAN.

$1000 of the date and at the rate of payment according to the age at which the holder became a member of the Pyramid Builders. Action was taken as provided by this by-law, and the amount of $300 was set aside to the certificate of the appellee in accordance therewith, being the amount so ascertained for that purpose. The appellee was notified of the action of the association and it has ever since been ready and willing to issue such a certificate to him. The same terms were offered to all other members of the Pyramid Builders class. The answer does not state how many of these certificate holders accepted the terms offered.

The answer further alleged that the amount paid in by the Pyramid Builders was insufficient to pay the insurance stipulated, and to mature the certificates as provided in the by-laws in force when they were issued, and in order that members received afterward at advanced rates should not be required to pay excessive amounts to raise funds for the payment of benefits provided for in the Pyramid Builders' certificates, and to maintain a just and equitable division of burdens, and that all members should contribute according to benefits to be received, and that the association might fulfill its obligations and preserve an equitable distribution of burdens and benefits, on the advice and orders of the superintendent of insurance and in compliance with the laws of the state, the action above stated relating to the Pyramid Builders' certificates was taken. It is further alleged that the association has no power to issue a certificate such as the appellee demands, which would confer privileges on appellee not enjoyed by other members, or relieve him from payments required of them which would be grossly inequitable.

The facts stated in this answer must, in view of the action of the district court, be taken as true.

It is admitted that the appellee made all the payments stipulated in the certificate and required by the by-laws in force when it was issued, and he is entitled

to relief unless precluded by the changes in the by-laws, or by some controlling equity or rule of law.

The argument is made that because the original plan was impracticable, and would have resulted in the collapse of the association if it had been continued, the appellee should be bound by a change of policy found to be necessary to maintain the order and to preserve its funds for the uses intended; and that having taken his certificate subject to such amendments as should thereafter be made in the by-laws, he can not now claim the benefit of the former by-law. On the other hand, it is insisted that the appellee's claim rests upon a plain contract, and any embarrassment of the order incident to its enforcement is no more a defense than such a consequence would be in the case of any other contract. It is also argued that the condition allowing future amendments is understood in the law to include only such amendments as are reasonable, and that any change which results in the repudiation of a contract or the destruction of vested rights is unreasonable and not binding upon the appellee.

It was held in *Miller v. National Council,* 69 Kan. 234, 76 Pac. 830, that where a certificate issued by such an order was subject to subsequently enacted by-laws, an increase of the rate of assessments, if reasonable and necessary to the accomplishment of the objects of the association, was binding upon the holder of the certificate. It was said in the opinion:

"The contractual relations between the members and the association should not be measured by the standard, or determined by the legal principles, which are applicable between an ordinary insurance company and the holder of one of its policies." (p. 240.)

It might be argued that a reduction in benefits is equivalent to an increase in dues or assessments, and therefore permissible under the decision just cited. In that case it appeared that after the amendment of the by-law increasing the rate the association refused to

accept payments tendered at the former rate, and entered the member as delinquent. The action was to compel restoration to membership at the old rate. In this case the first change in the by-laws providing for increased rates and impairing benefits was made within two years after the certificate was issued, other changes followed, but the association continued to receive the monthly payments just as provided in the contract for the full ten-year period specified without objection and without making provision for any different benefits than those specified in the certificate. It is true that the by-law under which the certificate had been issued was repealed and the amended by-laws provided for certificates with other conditions to be issued thereafter, but no provision was made for the old certificates until the year 1908, two years after the appellee had completed the payments specified in his contract. While recognizing the distinguishing features of a contract of this nature between a fraternal order and its members, pointed out in the Miller case, it must be held that the association, in order to be relieved from its obligation as written, was at least bound to indicate in some way that members who continued to make payments according to the agreement contained in their certificates would not receive benefits as stipulated for therein. Otherwise a member might well suppose that the new plan was intended to relate only to certificates thereafter issued. Ordinarily when a party accepts without condition the consideration agreed upon in a contract he is presumed to do so with the understanding that he will perform the corresponding obligation on his part. Nothing is perceived in the organization and objects of this association to prevent the operation of this wholesome principle.

It was held in *Boman v. Bankers' Union,* 76 Kan. 198, 91 Pac. 49, that although the insured member had agreed to be bound by a subsequently executed by-law the union, by the acceptance of assessments at the old

Hart v. Annuity Assoc.

rate without objecting to their sufficiency, had waived the enforcement of a new by-law reducing the indemnity of which he had no notice, and that the beneficiary should recover the indemnity stipulated in the certificate.

In *United Workmen v. Haddock,* 72 Kan. 35, 82 Pac. 583, it appeared that a by-law subsequently enacted provided that saloon keepers should not be admitted or retained as members of the order. It was held that this by-law, in the absence of a provision to that effect, did not avoid the certificate of a member already engaged in the business when his certificate was issued, and who continued in that occupation in a state where it was not unlawful. It was concluded that the new by-law did not affect and was not intended to affect the standing of such a member, and a recovery by the beneficiary was sustained.

In *Gaut v. American Legion of Honor,* 107 Tenn. 603, 64 S. W. 1070, 55 L. R. A. 465, in an action against a fraternal mutual benevolent society to restore the status of a member whose right to benefits had been reduced by a law enacted after he had made payments for several years, the court held that although the power to amend by-laws had been reserved, still the amended by-law should not be construed to impair the plaintiff's contract, which was beyond the power of the order to do, and should be construed as prospective in its operation. It was conceded that the action of the governing body was taken in good faith, in view of alarming conditions in the order, but it was held that the motive was immaterial.

Where a by-law had been adopted by a fraternal society reducing the benefits provided for in certificates previously issued, the court of appeals of New York held that the action of the society was a repudiation of vested rights and that an action by the member could be maintained to compel recognition of the contract. (*Langan v. Supreme Council Am. L. of H.,* 174 N. Y.

266, 66 N. E. 932.) In a later case the same court, after reviewing many previous decisions in that state, held that after a member had made payments for several years as provided in his certificate vested rights accrued which could not be impaired by a subsequently enacted by-law and that the member could maintain an action for reinstatement according to the terms of his certificate. (*Wright v. Knights of Maccabees,* 196 N. Y. 391, 89 N. E. 1078, 134 Am. St. Rep. 838.)

In *O'Neill v. Supreme Council, Am. L. of Honor,* 70 N. J. Law, 410, 57 Atl. 463, 1 A. & E. Ann. Cas. 422, it was held that damages might be recovered by a member of such an order in a situation similar to that of this appellee.

The by-laws adopted after the appellee's certificate had been issued and previous to the action taken in August, 1908, contained no reference to the so-called Pyramid Builders' certificates, and the appellee, whose payments were regularly accepted without objection or condition, can not justly be chargeable with notice that it was the intention of the order to materially reduce or affect the benefits stipulated in his certificate, even if the power to do so should be conceded.

Without further discussion of reasons for the conclusion, it is sufficient to say that in the situation here presented the association, by the acceptance of payments as provided in the certificate for the full time stipulated therein without objection or condition of any kind, is estopped from making such reduction. As it was said in *Wuerfler v. Trustees Grand Grove W. O. D.,* 116 Wis. 19, 92 N. W. 433, 96 Am. St. Rep. 940, when a contract "has been so far executed that to allow the corporation to repudiate it would work injustice to the other party thereto, who has in good faith relied thereon, the doctrine of estoppel applies and prevents such repudiation." And it was held that it was beyond the power of the association to reduce the benefits from the stipulated sum to an indefinite amount by a by-law en-

acted after the member had paid his dues for many years, although the usual right to make amendments had been reserved. Notes discussing this subject will be found in 83 Am. St. Rep. 706, 1 A. & E. Ann. Cas. 427, 10 A. & E. Ann Cas. 625, and 31 L. R. A., n. s., 417.

(See, also, *Wist v. Grand Lodge A. O. U. W.*, 22 Ore. 271, 29 Pac. 610; *Smith v. Supreme Lodge K. of P.*, 83 Mo. App. 512; and *Becker v. Benef. Soc.*, 144 Pa. St. 232, 22 Atl. 699.)

Other grounds of defense urged in the argument have not been overlooked and will be briefly referred to. The defense based upon the delay in bringing action for about four years after the right accrued, invoking the doctrine of laches, can not be sustained. It must be presumed that some time was necessary to negotiate for payment or settlement, and the suit was commenced in about eighteen months after the final action of the supreme council covering certificates of this class.

The contract is not deemed so unconscionable that equity will not enforce it. It can only be said that the consideration was not adequate for the indemnity promised. That was a matter of estimate involving many contingencies, requiring skill, knowledge and business sagacity, and the future growth of the order. Insufficiency of rates can not be ascribed to any wrongful conduct of the insured or of the association, but to a failure to correctly forecast the future of the business. Besides, it must be remembered that the association itself did not realize the extent of that failure until long afterwards, meanwhile receiving payments according to the original plan, and making no provision for indemnities, otherwise than as originally provided.

It is also urged that the contract can not be enforced because it was made in violation of a statute prohibiting insurance for a definite sum unless conditional upon the amount recovered from assessments, and from payment of annuities or anything of value to a member himself except for disablement or injury. (Gen. Stat. 1901,

§ 3523.) This act was in force when this certificate was issued and was held applicable in some respects to insurance business done by certain mutual benefit associations before the act was passed relating especially to such companies. (*The State, ex rel., v. National Association*, 35 Kan. 51, 9 Pac. 956; *Endowment and Benevolent Association v. The State*, 35 Kan. 253, 10 Pac. 872.)

The act, however, did not apply to associations operating under the supervision of a grand or supreme lodge, as this association appeared to be. (Gen. Stat. 1901, § 3543.)

The judgment providing for specific performance of the contract is in accordance with these views, and is affirmed.