No. 19,581.

ROBERT T. MOORE et al., *Appellants*, V. THE LIFE AND ANNUITY ASSOCIATION, *Appellee*.

### SYLLABUS BY THE COURT.

1. APPEAL—*Demurrer to Evidence—Motion for New Trial Unnecessary*. Where an action is determined by a trial court upon a demurrer to the evidence of the plaintiff, it is not requisite to entitle the plaintiff to an appeal that he should have presented a motion for a new trial in the district court.

2. LIFE INSURANCE—*Insured Entitled to Paid-up Policy—Damages*. Under the policy of insurance in this case the plaintiffs were entitled to a paid-up policy on demand therefor at any time after three years from the first payment thereon and to the amount of as many twentieths of $1000 as were the years the policy had been in force. Such demand having been made at a proper time and not complied with, the plaintiffs were entitled to maintain an action for damages in the amount of the cash value of such paid-up policy.

3. SAME—*Change of By-Laws—Effect of Payments*. It is not the policy of the law to compel a party to continue making payments for a term of years under a contract where by reason of changed conditions either the amount for which such payments should be made or the effect of payments is in dispute, but the rights of the parties should be adjudicated as of the time an action is instituted for that purpose.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed November 14, 1914. Reversed.

*Alex. S. Hendry*, of McPherson, for the appellants.

*Otis S. Allen*, of Topeka, and *A. R. Lamb*, of Coffeyville, for the appellee.

The opinion of the court was delivered by

SMITH, J.: On August 19, 1913, the plaintiffs commenced this action in the district court of McPherson county against the Life and Annuity Association.

The petition alleged the incorporation of the defendant under the laws of the state of Kansas in 1896; that

on April 9, 1900, the defendant executed and delivered
to plaintiffs a certain insurance policy or beneficiary
certificate of that date; that by the terms of such certifi-
cate the defendant contracted to pay $1000 to the sur-
vivor at the death of either of the plaintiffs; that the
plaintiffs should pay the defendant the sum of $1.27 on
or before the first day of each month during the con-
tinuance of the certificate, and it is alleged that the
plaintiffs had paid such amounts promptly up to the
time of filing the petition; that it was further stipulated
in the certificate that if in any year the benefit fund was
insufficient to pay all losses the reserve fund should be
used to pay such deficit, and further, that if the certifi-
cate remained in force for three years from its date,
it should have a paid-up value by the holder applying
for a paid-up certificate according to the laws of the
association; that such paid-up certificate should be in
lieu of the original certificate payable at the death of
either for as many twentieths of the value of the origi-
nal certificate as the years such certificate had been in
force; that if the certificate should remain in force for
twenty years from the date of the first payment, it
should then become paid up and the holder should be
relieved from making any further payments. It is
further alleged that the plaintiffs, on January 1, 1911,
jointly requested that a paid-up certificate be issued
according to the terms of the beneficiary certificate, and
that such request and demand has not been complied
with, and that the defendant does not intend to nor will
it carry out the terms of the beneficiary certificate by
issuing a paid-up certificate at the maturity thereof;
that by action of its national council in a special session
held on July 23, 1913, it repudiated its agreement with
the plaintiffs, adopting the following, designated as sec-
tion 15 of the by-laws:

"SECTION 15. Insofar as the laws of the State of Kan-
sas or of any other state in which the association is
licensed to do business may permit, any member who
desires a paid-up certificate for any amount, not to ex-
ceed the face value of his certificate shall pay into the

reserve fund such sum, or sums, as may be necessary together with his then share of the reserve fund at net single premium rates at his then attained age, to purchase such paid-up insurance. No paid-up certificate shall be otherwise issued; and no claim shall lie against the Association under any certificate after the discontinuation of payments, unless the foregoing provision has been complied with."

The plaintiffs pray for damages in the sum of $600 with interest and costs. To this petition the defendant filed an answer which is a general denial except it admits the incorporation of the defendant as alleged; that it delivered to plaintiffs a beneficiary certificate in the form alleged and admits the passage and adoption of the by-laws referred to in the petition, admits the application of plaintiffs for membership, and alleges that it contained the following:

"I agree to conform to and to be governed by the constitution, laws, rules and regulations and usages of the association now in force or which may hereafter be adopted."

The defendant further alleges that under the terms of the contract of insurance it had power and authority to change the rates charged plaintiffs as stated on the face of the certificate; that such rate is $1.27 per month and was inadequate and insufficient to provide a fund which would mature said certificate according to its terms within twenty years from the date of first payment, and it became necessary to raise such rate; that in accordance a special session of the national council of the association, which is the supreme body thereof, was duly called July 23, 1913, for the purpose, in part, of raising the rates of payment to be made by plaintiffs and other members holding such certificates. In short, that the council adopted amendments to the by-laws which provide, among other things, as follow:

"1.—A member may hold his present certificate and continue paying the same rate as that specified in his certificate so long as he remains a member of the Order, instead of a term of years.

"2.—He may pay a rate per month sufficient to mature his certificate within the time provided for in his certificate; this in your case would $5.76 per month for 84 months.

"3.—He may pay a lump sum sufficient to mature his certificate; this in your case would be $395.69."

Then follow three forms of acceptance of the three different propositions to be made by members, respectively, and then the following, apparently addressed to members:

"If you fail to designate, before December 1, 1913, which of the foregoing propositions you will accept, you will be deemed to have accepted proposition No. 1, and your payments from that time will only be accepted as being paid under that agreement."

The form of acceptance provided by defendant for members to sign as to proposition No. 1 required the member to agree to pay monthly dues on his certificate as long as he lived and remained a member of the association.

The plaintiffs thereupon amended the petition by attaching a copy of the certificate sued on and a copy of the constitution and by-laws of the corporation at the time of issuing the certificate and as they existed in 1912. An amended answer was also filed and a reply thereto.

The case was called for trial and a jury empaneled to pass upon the issues of fact, and we are not advised by the abstract just what evidence was introduced. The defendant, however, in its demurrer to the evidence, recites, "The pleadings in the case with their exhibits contain the evidence offered by the plaintiffs." The journal also recites the introduction of evidence by the plaintiffs, and that the plaintiffs rested their case. The remarks of the court in passing upon the demurrer to the evidence are also preserved in the abstract, and it finds, "Now in 1913 they (referring to appellee) did entirely do away with the right to a paid-up policy."

That the defendant issued the policy as pleaded by the plaintiffs is admitted, and it appears thereby that the policy contained this language: "I agree to conform to and to be governed by the constitution, laws, rules, regulations, and usages of the association now in force or which may hereafter be adopted."

The court in passing upon the demurrer said that the by-law doing away with the provision for a paid-up policy was either valid or invalid. If valid, that the plaintiffs had no right to recover; if invalid, they were not injured thereby, but, in effect, that they could continue to make payments as was done in the Hart case, and at the end of twenty years compel the company to issue them a paid-up policy as it had agreed to do, and, in substance, that in either case the plaintiffs were not injured, or, at least, had suffered no injury at the time of the trial.

It is not the policy of the law to require a party to continue for years to make or tender payments when his right to make the same, either in the amount necessary to preserve his rights as claimed by him or the effect of such payment, is in dispute. The plaintiffs claimed the right to pay $1.27 per month for a period of twenty years, and that they then would be entitled to a paid-up policy. The defendant, however, by its amended by-laws undertook to abrogate entirely the right of the plaintiffs to a paid-up policy, although by the contract embraced in the policy they had by their payments thereunder acquired a vested interest in, at least, eleven-twentieths of the full amount of the policy. The plaintiffs did continue for a short time after the amendment to pay at the old rate, a much higher rate being prescribed if the policy was to mature in twenty years, and the defendant, by reason of such lesser payment, contends that the plaintiffs had accepted the provisions of the by-law to pay at that rate during life.

There is no contention, however, but that in 1911 the plaintiffs did demand of defendant a paid-up policy in accordance with the conditions of the policy.

Neither is it controverted, as plaintiffs allege, that payments were made at the rate of $1.27 per month up to the time of the beginning of this action. If so, they were entitled on demand to have these additional payments, at least up to the time of notice to them of the amendment of the by-law, included in determining the amount of the paid-up policy.

The law applicable to fraternal beneficiary societies is discussed at length in *Hart v. Annuity Assoc.*, 86 Kan. 318, 120 Pac. 363. In that case, however, the contract had been fully performed by the beneficiary before the change in the by-laws of the association. Therein *Boman v. Bankers' Union*, 76 Kan. 198, 91 Pac. 49, is cited with approval. In the Boman case it was held that although the insured member had agreed to be bound by a subsequently issued by-law, the union, by the acceptance of assessments at the old rate without objecting to their sufficiency, had waived the enforcement of a new by-law reducing the indemnity of which he had no notice, and that the beneficiary should recover the indemnity stipulated in the certificate. Many other cases are cited therein, which are in a measure applicable to the questions involved herein. The law seems to be well settled that the association could not in this case by an amendment to its by-law destroy or affect a vested interest which had accrued prior to the amendment of the by-laws of the association and notice thereof to the beneficiaries. (See *Hart v. Annuity Assoc.*, supra, and cases therein cited.)

The beneficiaries in this case had been paying their dues or assessments from the time of the issuance of the policy in 1900 until the change in the by-laws in July, 1913. Until the time plaintiffs were informed of such change in the by-laws, at least, they were entitled on demand to a paid-up certificate for the proportionate amount of the original policy, being about thirteen twentieths of $1000.

Before the submission of the case in this court the appellee filed a motion to dismiss the appeal on the ground that the case was decided on a demurrer to the evidence and that no motion for a new trial was filed in the district court. In support of its contention that such motion is requisite before a review can be had in this court, it cites *Coy v. Railway Co.*, 69 Kan. 321, 76 Pac. 844, and several earlier cases which sustain its contention. On the other hand, the appellants cite *Wagner v. Railway Co.*, 73 Kan. 283, 85 Pac. 299, and several subsequent cases which overrule the former decisions on this question.

In accordance with the later decisions it is held that the demurrer to appellants' evidence admits as facts whatever such evidence fairly tends to prove, and it is a question of law—not of fact—whether such facts constitute a cause of action in favor of appellants, and that no motion for a new trial was necessary to present this question to this court. The motion to dismiss is denied.

The action was not to compel the defendant to issue a paid-up certificate, but was an action for damages, claimed by the plaintiffs to be $600. The value of a paid-up policy or certificate is a matter largely of computation but also involves some expert knowledge. The plaintiffs should therefore have produced evidence of such computed value. We are unable to say from the abstract that they offered any specific evidence of the cash value of such certificate, but it was recognized in the policy and pleadings as of some value, and we think the court erred in sustaining the demurrer to the evidence and rendering judgment against the plaintiffs for costs, especially as the demurrer to the evidence did not especially call the attention of plaintiffs to the failure of proof of the value of the paid-up policy, neither was the decision sustaining the demurrer based thereon. Had the court based its decision thereon the plaintiffs might have asked to reopen the case that they

The State, *ex rel.*, v. City of Hutchinson.

might supply the omission. On the other hand, the ground upon which the demurrer was sustained would postpone for years a determination of the rights of the parties. The judgment as rendered might also be construed as a bar to a future action, and, if so, an apparent injustice would result to plaintiffs.

The judgment is reversed and the case is remanded for a new trial.