No. 19,605.

A. BASS, *Appellee*, V. THE LIFE & ANNUITY ASSOCIATION, *Appellant.*

SYLLABUS BY THE COURT.

1. BENEFICIARY CERTIFICATE—*Indorsements on Back—Part of Contract.* Statements of the conditions and effect of a beneficiary certificate printed upon the back of the document, have the same effect as though incorporated therein.

2. SAME—*Paid-up Certificate—Effect of Change of By-laws.* Apart from any question of power to alter the terms of the contract, a provision of a twenty-year payment beneficial certificate issued by a fraternal association, giving the holder the right to cease payments at any time and receive a paid-up certificate for a proportionate part of the amount named is not affected by the repeal of a by-law to the same effect, in the absence of anything further to show that such result was intended.

3. BENEFICIARY ASSOCIATION—*No Assets with Which to Pay—Not Immune from Liability.* The fact that no means have been provided for enabling an incorporated fraternal beneficiary association to respond to a money demand does not make it immune from liability in that regard, nor prevent the rendition of a judgment thereon.

4. FRATERNAL INSURANCE—*Refusal to Issue Paid-up Certificate—Measure of Assured's Damages.* Where a fraternal beneficiary association wrongfully refuses to issue a paid-up certificate in accordance with an agreement the damages are not to be measured by the cost of a paid-up policy of insurance for the same amount in an old-line company, but where the test of the cost of a substitute is applied, reference must be had to the cost of a precisely similar paid-up certificate in, an association of precisely the same kind.

5. SAME—*Judgment Modified—Association Given Opportunity to Issue Paid-up Certificate.* In the present case, the wrongful refusal of a fraternal beneficiary association to issue a paid-up certificate having been based upon plausible grounds, and not characterized by bad faith, it is held that justice will be best subserved by giving it a further opportunity to issue such certificate before subjecting it to liability for damages.

Appeal from McPherson district court; FRANK F. PRIGG, judge. Opinion filed July 10, 1915. Modified.

*A. R. Lamb,* of Coffeyville, *S. H. Allen,* and *Otis S. Allen,* both of Topeka, for the appellant.

*Z. Wetmore,* of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: On April 29, 1898, the Life and Annuity Association, an incorporated fraternal beneficiary society, issued a certificate to A. Bass, undertaking to insure his life for $2000 in consideration of the monthly payment of $2.10. The certificate provided that if payments were maintained for twenty years it should become paid up; that at any time after three years the holder might receive in lieu of it a paid-up certificate for as many twentieths of $2000 as he had completed yearly payments. On May 29, 1913, having kept up his payments to that time, Bass asked for a paid-up certificate for $1500. His request was not granted. He brought action against the association for damages, and recovered a judgment for $873, from which it appeals.

The plaintiff's application for membership contained the same provisions as are set out in full in *Moore v. Annuity Association,* 95 Kan. 591, 148 Pac. 981, which upon the authority of that case rendered his contract subject to any changes that might be made in the by-laws or rules. On July 23, 1913, the association adopted a by-law requiring a member who desired a paid-up certificate to pay a certain amount into the reserve fund. This amendment does not affect the rights of the plaintiff because they had already become fixed. When he made the request for a paid-up certificate it became the duty of the association (if he was then entitled to it) to issue it at once. It could not delay action and then impose a new condition upon the assertion of the right which had already accrued. (*Hart v. Annuity Assoc.,* 86 Kan. 318, 120 Pac. 363.)

The defendant complains of a ruling rejecting its offer to show that in 1900 a by-law which provided for the issuance of a paid-up certificate at any time after three years was amended by inserting a condition as to the time and manner of making application therefor, and that in 1910 it was repealed altogether. No point is made with reference to the amendment, which was not pleaded, and which seems to be referred to merely as showing the history of the by-law. But it is urged that the repeal of the by-law cut off the plaintiff's right to obtain a paid-up certificate, which was not restored until 1913, when the condition of an additional payment was

attached. Conceding the power of the association to deprive the plaintiff of his right in this respect, a purpose to do so was not shown. The by-law on the subject was merely repealed. No affirmative action was taken indicating an intention to change the effect of any certificate already issued. No showing was offered of any conduct or circumstance suggesting such a design, and it is not readily to be inferred. (29 Cyc. 72; Note, Ann. Cas. 1913 C, 677.) The right of the plaintiff to a paid-up certificate was not based upon the existence of the by-law but upon the express terms of his contract. The matter was not referred to on the face of the certificate, but on the back of that document were printed a number of statements regarding its conditions and effect. These constituted a part of the contract. (25 Cyc. 744.) One of them purported to confer the right to a paid-up certificate, in the words of the by-law, but without reference to it. The plaintiff contends that by virtue of a rule in existence when he became a member no change could be made affecting his rights. This rule, designated as "law 52," was not set out in any of the abstracts or briefs or otherwise called to the attention of the court in the Moore case. It concludes with the words: "No amendment made to these laws shall effect any certificate issued before said change is made." The appellant's abstract in the present case recites that an offer to show the repeal of such law was made and rejected, but this ruling is not open to review, for no evidence on the subject is shown to have been produced at the hearing of the motion for a new trial. (Civ. Code, § 307.) However, the argument based upon this law need not be considered, for we are persuaded that, assuming the existence of the power to cut off the right to a paid-up certificate, the mere repeal of the by-law on the subject did not have that effect.

The defendant maintains that if the plaintiff's contentions are otherwise sound, his remedy lies solely in requiring the issuance of a paid-up certificate—that an action for damages is not maintainable, because owing to the character of the association it has no funds from which a money judgment could be paid, and no machinery by which such fund could be provided. There are decisions which support that theory, but the weight of authority is to the contrary. (*Fort v. Iowa*

*Legion of Honor,* 146 Iowa, 183, 199, 200, 123 N. W. 224.)
The fact that the means have not been provided for enabling
a corporation to respond to a money demand does not render
it immune from liability. If the defendant in its corporate
capacity perpetrates a wrong that imposes upon it a clear
pecuniary obligation the character of its organization can not
prevent a judgment being rendered thereon. In the present
case another form of remedy happens to be possible, but that
does not affect the question of jurisdiction. We conclude that
the courts have authority to render a money judgment in such
circumstances. Whether it should be exercised here is a mat-
ter that will be considered later.

The defendant seeks to invoke the protection of a clause in
the plaintiff's certificate to the effect that no action shall be
maintained upon it until the claim thereunder had been sub-
mitted and determined as provided by the laws of the associa-
tion. A by-law provides that the board of directors shall re-
quire all claims to be presented in writing, and that no claims
shall be paid until approved by them. No issue regarding
this matter was presented by the answer, which denied all
liability. It is therefore clear that the presentation of a writ-
ten demand would have been fruitless, and its omission is not
important, even if, as seems doubtful, the clause referred to
was intended to apply in such a situation as that here pre-
sented.

Evidence was given that a paid-up policy for $1500 in an
old-line life insurance company would have cost the plaintiff
$873.03, and this obviously controlled the verdict, as shown
by its amount—$873. The defendant complains of this basis
of recovery, and we think with justice. The ordinary measure
of damages for the wrongful refusal to issue a paid-up policy
is said to be the cost of just such a policy as was stipulated
for, in a responsible company. (*Life Insurance Co. v. Kelso,*
16 Kan. 481.) Here there was no showing that the policy of
an old-line company referred to by the witness was sub-
stantially equivalent to the plaintiff's certificate, and of course
that is not the fact. The usual old-line policy confers a num-
ber of privileges not enjoyed by the holder of a beneficiary
certificate—for instance, that of turning it in at any time
and receiving its surrender value in cash, or of getting a

loan upon it. But more than that, the insurance policy is is-
sued as a purely business contract, and is charged for on that
basis, a presumably responsible concern undertaking to make
stated payments under stated conditions. The literal keeping
of the contract on its part is deemed to be almost certain,
while the measure of protection of a beneficiary certificate,
issued by an association which can pay nothing except out of
the contributions of its members, will be affected by a number
of considerations, one of the most important being the good
judgment with which its collections are adjusted to its pro-.
spective liabilities. Doubtless one party to a contract can not.
ordinarily be heard to suggest his own inability to perform
his agreement, in mitigation of damages for its breach. But
a practical view must be taken of the present situation, and
the question for determination is, What loss has the plaintiff
actually suffered by the refusal of the defendant to issue him
a paid-up certificate. If the problem is to be solved by deter-
mining what it would cost him to obtain a substitute, the sub-
stitute considered should be something of the same value as
the thing denied him, not something of far greater worth.
Evidence of the cost of an old-line policy may be of some
utility in attempting to estimate the worth of a certificate in
an assessment association, but it clearly can not determine it.
The degree of probability of ultimate payment is an important
factor. It is difficult to form a judgment on that subject, and
still more difficult to give it expression in terms of dollars
and cents. But doubtless in case of necessity some sort of
reasonable estimate can be made as to the value of any par-
ticular insurance contract, taking all the circumstances into
account.

Recurring to the question as to the form of plaintiff's
remedy, the ordinary rule is that where an insurance com-
pany violates its agreement to issue a paid-up policy the per-
son aggrieved has the option to enforce specific performance
or to exact compensation in damages, the choice lying with
the innocent party, and not with the wrongdoer. (*Life Insur-
ance Co. v. Kelso*, 16 Kan. 481.) But some modification of
the rigor of this rule is permissible in the present case. The
defendant is a coöperative association, having no capital stock,
which made the mistake of writing certificates upon too liberal
terms. In refusing to issue a paid-up certificate to the plain-

tiff it no doubt acted in good faith, and the grounds upon which its action was based are not wanting in plausibility. The plaintiff carried his certificate for fifteen years, and therefore had paid upon the basis of the original contract $378. If he had died during this time his beneficiary would presumably have been paid the full amount named—$2000. So that he has had the benefit of insurance for that period. If he were now to receive the amount of his judgment—$873—the transaction would be a most profitable one to him. If he were to be repaid the amount he has actually expended, with interest, less the value of the insurance he has had, he would be nothing out of pocket, and would lose only the advantage he may be supposed to have derived from having made a good bargain. He is entitled to require the association to perform the contract, so far as possible, however improvident its terms. But the defendant did not promise to pay the plaintiff $873, or any other sum. It undertook to give him a paid-up certificate, and if it were still to do that, he would have exactly what he bargained for. Such a certificate, if issued, might never be paid, but that is a possibility inherent in the nature of the original contract. The plaintiff has no superior equities over other members. He is in no respect a preferred creditor. In view of the character of the association, of the good faith of its conduct, and of the great difficulty of estimating the value of any paid-up certificate it might have issued, we think justice will be best subserved by giving it the opportunity to perform its contract specifically.

The judgment is therefore modified and the cause remanded for these further proceedings: If within thirty days after the mandate is spread of record in the district court the defendant shall issue to the plaintiff a paid-up certificate for $1500, and reimburse him for several payments which he has made since requesting it, the case to be disposed of by a judgment against the defendant for the costs; otherwise a new trial to be had upon the sole issue of the amount of the plaintiff's damages, measured by the value of a paid-up certificate for $1500 issued by the defendant on the date of his request, judgment to be rendered for the plaintiff for the amount so determined.

The costs in this court will be divided equally between the parties.