M. T. CLEMENT, Exx., etc., *v.* IRWIN S. CLEMENT *et al.*

AND

IRWIN S. CLEMENT *et al. v.* SUPREME LODGE KNIGHTS OF PYTHIAS *et al.*

'(*Jackson.*   April Term, 1904.)'

1. **BENEFIT ASSOCIATIONS.** **Suits by different beneficiaries on benefit certificate.**

Where suit is instituted by one as executrix of the insured and as next friend of her minor children against a benefit association on a benefit certificate, claiming that her said children are entitled to all the insurance money, and making others, named as beneficiaries and claiming part of the insurance, defendants, such other beneficiaries so sued may institute and maintain an original bill against the association on the certificate to recover the whole amount of the certificate for themselves and the other named and infant beneficiaries for whom the executrix sued, especially where after the death of the insured they have assigned all or part of the amount due them to a person who was not a party to the bill of the executrix, and a plea in abatement by the association to such bill is properly overruled by the court. (*Post, pp.* 42-47.)

2. **SAME.** **Same. Consolidation of such suits is proper, when.**

The two suits by different beneficiaries against a benefit association on the same certificate are properly consolidated, where this brings all the matters and parties against the association before the court in such shape that the rights of the parties against the association, and as between themselves, may be adjusted in the one consolidated suit. (*Post, pp.* 45, 46, 47.)

Clement v. Clement.

3. **SAME.** **By-law against suicide is valid, and applies to substi-tuted certificate issued after it is made.**

A by-law of a benefit association made after a benefit certificate is issued, but before a substituted certificate is issued, providing that only a proportionate part of the insurance shall be paid in case of suicide of the member, enters into the substituted certificate, and becomes a part of the contract between the parties. Such by-law is reasonable, valid, and enforceable. (*Post, pp.* 47, 48.)

Cases cited and approved: Knights of Pythias v. LaMalta, 95 Tenn., 157.

Case cited and distinguished: Gaut v. American Legion of Honor, 107 Tenn., 603.

4. **SAME.** **Same. Evidence held sufficient to prove intentional suicide.**

In an action against a benefit association on a member's benefit certificate, the evidence set out in the opinion is held sufficient to prove the member's death by intentional suicide, or from criminal recklessness and carelessness in taking morphine which, the member must have known or had reason to know, would end in his self-destruction. (*Post, pp.* 48-52.)

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County.— F. H. Heiskell, Chancellor.

ISRAEL H. PERES, for Mrs. M. T. Clement.

L. & E. LEHMAN, ELIAS GATES and W. B. SANFORD, for IRWIN S. and W. A. CLEMENT.

R. G. BROWN, for Supreme Lodge Knights of Pythias.

MR. JUSTICE WILKES delivered the opinion of the Court.

This is a suit against the Supreme Lodge Knights of Pythias upon a benefit certificate issued upon the life of J. D. Clement in the endowment rank of that order.

The application for the insurance was made about the twenty-first of March, 1891, and on that date a certificate for $3,000 was issued; the beneficiaries named therein being the minor children of the insured member, J. D. Clement. This certificate was surrendered April 21, 1897, at the request of the insured, and a new certificate was issued, with beneficiaries different from those named in the first certificate. On the 13th of March, 1899, this second certificate was surrendered, and a third certificate was issued at the request of the insured; the beneficiaries being the same as those named in certificate No. 2, which was surrendered because it had become defaced. On the 20th of November, 1901, this third certificate was surrendered at the request of the insured, and a fourth certificate was issued, the beneficiaries therein named being Irwin S. Clement, for $1,000; W. A. Clement, for $1,000; and $1,000 for the minor children of the assured—six in number. This

certificate remained in force and effect until the 6th of September, 1902, at which date the assured, J. D. Clement, died in the city of Memphis. Suit is brought on this fourth certificate.

All of the certificates provide that the assured shall comply with the laws, rules, and regulations governing his rank now in force or that may hereafter be enacted by the Supreme Lodge Knights of Pythias, and they further provide that any violation of the above-mentioned conditions or the requirements of the laws now or hereafter in force governing the rank shall render the certificate and all claims thereunder null and void, and the said endowment rank shall not be liable for the above sum or any part thereof.

On November 7, 1902, Mrs. M. T. Clement, as executrix and as next friend of her minor children, the beneficiaries named in the last certificate issued by the order to J. D. Clement, filed her bill in the chancery court of Shelby county, Tennessee, against Irwin S. Clement, W. A. Clement, and the Supreme Lodge Knights of Pythias of the World, and enjoined the payment of any of the amount due under said certificate to Irwin S. and W. A. Clement; claiming that the change in the beneficiaries made in the last certificate issued was procured by fraud and duress, and that the entire recovery was due to her minor children named in the bill.

The Supreme Lodge Knights of Pythias, answering the bill, disclaimed any knowledge of the duress or

Clement v. Clement.

fraud set up therein, but claimed that J. D. Clement
had committed suicide, voluntary or involuntary; that
his death was caused or superinduced by narcotics or
opiates, to the use of which Clement had become ad-
dicted; that his death was caused or superinduced by
the excessive use of intoxicating liquors, to which he
had become addicted for some time prior to his death;
and that the taking of the morphine by the said Clem-
ent, which was the immediate cause of his death, was
caused or superinduced by the mental and physical con-
dition into which he had lapsed on account of his ex-
cessive use of intoxicating liquors. The defendant set
up as a defense that under the by-law known as the
"suicide clause," thereafter set out, it was liable to the
beneficiaries named in the benefit certificate issued by
it to J. D. Clement only in the amount of $1,327.43.

This amount it paid into court, and asked that its
answer be held and taken to be a bill of interpleader
between said beneficiaries, and that they be required to
settle and determine their conflicting claims to the
fund without cost to the defendant.

It is agreed that this amount is what was due at the
time of tender, if the suicide clause controls in the
premises.

On June 29, 1903, Irwin S. and W. A. Clement filed
their original bill in the chancery court of Shelby
county, Tennessee, seeking to recover for themselves
and their assigns, and for the minor children of J. D.

Clement, named as beneficiaries, the full amount of the benefit certificate.

To this bill the Supreme Lodge Knights of Pythias filed a plea in abatement, setting up the pendency of the suit instituted by Mrs. M. T. Clement, executrix, wherein all the parties in the second bill were before the court, and the same issues over the same subject-matter were presented.

The plea in abatement, by the chancellor, was overruled, and an order was made by the court, of its own motion, consolidating the two causes, to which action of the court defendant excepted.

Defendant thereupon filed an answer to the bill of Irwin S. and W. A. Clement, setting up the same defenses relied on in the first answer filed, reciting the payment into court of the sum of $1,327.43 before demand upon it for payment by the complainants, and asked that the answer be taken as a bill of interpleader, and the payment into court be treated as a tender of the amount justly due upon the benefit certificate.

The chancellor found, upon the entire record, that the complainants Irwin S. and W. A. Clement were entitled to recover of the Supreme Lodge Knights of Pythias $1,000 each, and the minor children of J. D. Clement $1,000 jointly, together with interest from November 7, 1902, and decreed two-thirds of the cost against the order, and one-third against the minor defendants to the second bill.

From this decree the Supreme Lodge Knights of Pythias alone has appealed, and has assigned as error:

(1)   The lower court erred in overruling appellant's plea in abatement to the bill filed by Irwin S. and W. A. Clement.

(2)   The lower court erred in holding appellant liable for the payment of any sum upon the benefit certificate, except the amount of $1,327.43; this being the legal liability under the contract sued on.

We think that the first assignment of error is not well made.   The bill filed by Mrs. M. T. Clement, executrix, and next friend for the minor children of J. D. Clement, claimed that the entire insurance of $3,000 belonged to the minor children of the assured, while Irwin S. Clement and W. A. Clement claimed that they were entitled each to one-third of the amount.   The claim of Mrs. Clement as executrix and next friend of the minor children of the insured was antagonistic to the claims of Irwin S. and W. A. Clement; and, while they were made parties defendant to her bill, they could not set up and prosecute their rights as mere defendants, but must do so either by cross-bill or an original bill, and the original bill was entirely proper, since the adult beneficiaries, after the death of the insured, had assigned the amounts due them, in whole or in part, to one Frawley, who was not a party to the bill of Mrs. Clement, executrix.

The action of the court in overruling the plea in abatement was therefore correct, as was also his action

Clement v. Clement.

in consolidating the two causes after the second bill had been filed, as this brought all the matters and parties before the court in such shape that the rights of the parties against the lodge, and as between themselves, might be adjusted in the one consolidated suit.

The second assignment of error raises the question whether the clause in the benefit certificate in regard to the suicide of the assured is valid and binding, and as to whether the assured committed suicide.

The by-law relating to deaths by suicide was passed by the Supreme Lodge Knights of Pythias in 1896, and was in force and effect when the second, third, and fourth certificates were issued, and at the death of the assured.

It is in the following terms: "If the death of any member of the endowment rank heretofore admitted into the first, second, third, or fourth classes, or hereafter admitted, shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates; or in consequence of a duel, or at the hands of justice, or in violation or attempted violation of any criminal law, then the amount to be paid upon such membership certificate shall be a sum only in proportion to the whole amount as the matured life expectancy is to the entire life expectancy at the date of admission to the endowment rank, the expectation of life based upon the American Experience Table

of Mortality in force at the time of such death to govern."

We are of opinion that this by-law entered into the certificate in controversy, and became a part of the contract between the parties—especially as it was in force at the time the last certificate sued on was taken out, which fixes the rights of the parties.

That such a by-law is reasonable, valid, and enforceable has been held by this court in the case of *Supreme Lodge Knights of Pythias* v. *La Malta,* 95 Tenn., 157, 31 S. W., 493, 30 L. R. A., 838, and the force and effect of the holding in that case is in no wise questioned or lessened by the holding in the case of *Gaut* v. *American Legion of Honor,* 107 Tenn., 603, 64 S. W., 1070, since these cases are clearly distinguishable one from the other, as shown by the opinion in the latter case.

The next question which arises is whether or not the assured committed suicide.

We think the weight of the evidence is that the insured came to his death from an overdose of morphine taken by himself, and not prescribed by any physician at the time it was taken; that it was taken to relieve himself from pain and suffering; and that, from his knowledge of drugs, he must have been aware of its danger, and that the probable result would be his own self-destruction.

The assured was at the time of his death in very feeble health, and in a very debilitated condition. He had become unable to earn his own living, and had grown

to be a very great burden and incumbrance not only to himself, but to his brothers. He was a physical wreck, unable to work, and at the time of his death was sleeping at night upon the floor and benches of the courtroom by permission and tolerance of the keeper of the building.

Several nights previous to his death he spent in the courtroom by permission of Mr. Harold, the night watchman. He looked bad, and stated to Harold that he was sick. On the night of Friday, September 6, 1902, about 2 or 3 o'clock in the morning, the watchman heard him groaning; and two policemen with him found the assured lying on a bench, with his coat and shoes off, his coat rolled up under his head, and ᐧhis feet swollen. He was groaning and half asleep. He was aroused, put on his shoes, and walked out into the lobby, and there laid down. The watchman passed him several times before he went off duty at 5 o'clock in the morning. Brett, one of the policemen, found the assured at half past 5 wide awake, suffering, grunting, and groaning like a man in extreme pain, sitting bent forward with his elbows on his knees in a sort of cramped position. He asked to be sent to the hospital.

When Brett went to the station house he reported that there was a sick man at the courthouse, who wanted to go to the hospital. Brett examined him, he says, to see whether he had any empty morphine bottle on him, and found none, and none were found upon him at any time.

When the assured was carried to the hospital, Dr. Primrose was called to attend him from another part of the building, being told that it was a morphine case. He states that he found his patient sitting in a chair in a very stupid condition. He asked him if he had taken morphine, to which he replied that he had. He then asked him how much, and he replied, "A dime's worth." He then asked him, "When did you take it?" And his reply was, "I took some of it last night." He didn't know when he took the rest.

Dr. Primrose says that Clement was in the full possession of his senses, and knew what he was saying, but that he soon passed into a very stupid condition, and then into unconsciousness, from which he was never again aroused, and that he died at 5 o'clock that evening.

Dr. Primrose speaks positively that the death was caused by morphine poisoning, and gives the symptoms and indications which lead to that opinion, and also states the remedies applied by him to the case.

He was very closely, if not severely, cross-examined, and, in brief of counsel, is criticised as being, if not incompetent, at least not well informed as a physician.

There is no evidence tending to show that he was not a reputable physician, and it appears that he was on duty in the city hospital.

There is proof tending to show that the assured at one time read medicine, and that he was familiar with drugs and their effects.

Clement v. Clement.

We think it quite clear that he took the morphine, as he says he did, and at a time when he was suffering great physical pain; and, if he did not intend thereby to take his life, he was criminally reckless and careless in taking the drug, and must have known, or had reason to know, that it would end in his self-destruction.

The contract between the order and the policy holder is, in effect, this: The company says: "We will insure you against everything but death by self-destruction. If you die by your own hand, we will pay you only a portion of the amount we would pay if you died a natural death. The entire amount of your certificate will not be forfeited, neither will it be paid, but we will make an equitable diminution of it."

Under such stipulations, the assured is protected for the full time he complies with his contract, and until he by his own reckless act puts an end to the mutual obligation assumed by him and by the order.

When he joins the order his benefits are calculated upon the basis of his life expectancy, the risk of suicide being eliminated from the calculation. If by his own act the member shortens his life expectancy, it is only fair that he should be paid only such sum in proportion to his matured expectancy as would compare with his expectancy when he became a member.

But in any event such is the contract which the parties have made for themselves, and it is the province of the court to enforce it as made.

We are of opinion that the weight of the evidence in

this case is sufficient to overthrow the presumption of law against suicide, and that it does show that the assured's death was an act of self-destruction; and, under the terms of the policy, only a proportionate part can be recovered.

It is agreed that this proportionate part is $1,327.43, and this amount has been paid into court, and is all, we think, under the facts, is recoverable upon the policy.

We have not attempted to define what is meant by "involuntary suicide," nor have we attempted to discriminate between involuntary suicide and accidental death, because in the present case the evidence, as we see it, shows either an intention to commit suicide, or such a reckless use of the deadly drug as the assured knew, or must have known, would produce death.

The decree of the court below is therefore reversed and modified as herein indicated, and the cause is remanded to the court below, that the fund may be paid out to the parties entitled. The costs of appeal will be paid by the appellees. The costs of the court below will be paid as that court may direct.