# DANIEL W. LEE v. OCCIDENTAL LIFE INSURANCE COMPANY.—291 S. W. (2d) 273.

Middle Section.  February 24, 1956.

Petition for Certiorari denied by Supreme Court, June 8, 1956.

Joseph L. Lackey, Nashville, for plaintiff.

Ward DeWitt, Jr., Trabue & Sturdivant, Nashville, for defendant.

SHRIVER, J. The parties will be referred to as plaintiff and defendant as they appeared in the Court below.

I

The plaintiff brought his suit in the Court of General Sessions for Davidson County, Tennessee, seeking to collect $800 under an insurance policy for the loss of use of his right hand and arm.

Judgment was rendered in the Court of General Sessions in favor of the plaintiff, whereupon, said cause was appealed to the Circuit Court and there heard before his Honor, Judge Byrd Douglas, without the intervention of a jury.

The Circuit Judge dismissed plaintiff's suit and an appeal was perfected to this Court in due course and errors assigned.

## II

The essential facts are as follows:

In 1943 the defendant insurance company issued to the International Brotherhood of Boilermakers, Iron Shipbuilders and Helpers of America (hereinafter referred to as the Union) a Master Group Policy of insurance providing certain benefits for the members of said union. Plaintiff was issued certificate No. 524266, exhibit "A" to the testimony of Daniel W. Lee, and attached to the transcript. Among other things said certificate provides benefits for partial disability payable to the insured member, and under section 3(b) thereof it is provided: "In the event of the entire irrecoverable loss of the use of one entire hand or arm as the result of accident or disease . . . $800.00."

It is to be noted that the certificate contains the following provision:

"This Certificate is issued pursuant to Article XII of the Constitution and By-Laws of the International Brotherhood of Boilermakers, Iron Shipbuilders and Helpers of America and the amendments thereto as now in force or as they may hereafter be amended."

Said certificate also shows on its face that the insurance coverage is under the terms and conditions of group policy No. 756100, the benefits of which are merely summarized in the certificate issued to plaintiff.

Plaintiff joined the said Union while at work in Waukegan, Illinois, in 1943, and it is not disputed that he continued to pay his dues and the premiums on the aforesaid policy so that it was in force at the time he received

the injuries complained of, although he had not continued in the occupation of a Boilermaker or Iron Shipbuilder or Helper.

The record shows that, on *May 10, 1949,* the constitution and by-laws of the Union were duly amended at a convention held in Montreal, Canada, which amendment restricted the coverage for the loss of use of an arm, to a loss sustained while "working at our trade." On this same day, that is May 10, 1949, an endorsement was added to the Master Group Policy restricting coverage in the manner provided by the aforesaid amendment to the By-laws.

In *August, 1953,* plaintiff fell from a ladder while pruning trees at the Tennessee School for the Blind at Donelson, Tennessee, at which institution he was employed by the State. The fall resulted in a broken foot, for which he was paid certain disability benefits by the State. Following the fall from the ladder, plaintiff began to lose the use of his right arm.

Dr. Laurence Grossman, who treated him, stated in part: "On February 23, 1954, he had developed a marked athetoid tremor of the right hand. In other words his hand would wander in space. That type of tremor is always due to involvement of a certain area of the brain, that condition is thought to be traumatic in its origin."

The doctor was asked if it was his opinion that the fracture of the foot had some connection with the condition of the patient's hand and he answered, "I think so. He never had this condition prior to this. Oftentimes a long period of immobility will result in people having small clots, which may have been the basis of this."

No contention is made by plaintiff that he was working at the trade of Boilermaker, Iron Shipbuilder or Helper, at the time of the injuries complained of, or that he was on duty for the District, State or Subordinate Lodge.

### III

There are two assignments of error as follows:

"1. The Circuit Judge erred in holding that the defendant had power or authority to decrease the benefit provided for in the Group Policy and the certificate and in particular modify that provision of the policy which provided for the payment of $800.00, in the event the insured member sustained by accident, or as a result of disease the entire and irrecoverable loss of use of one hand or one arm. Said power or authority to decrease said benefit being claimed by the defendant under and by virtue of a meeting of the officers of the Brotherhood at a convention held in Montreal, Canada, on or about May 10, 1949.

"2. The Court erred in holding that the Brotherhood was vested with authority to change the contract under which the plaintiff was insured against the loss of use of a hand or arm to the extent of $800.00, so as to deprive the plaintiff of any benefit whatever for the loss of use of his arm and hand."

### IV

It is seen from the foregoing and the record (Tr. pp. 32-33), that the change in the by-laws of the Union resulted in a change in the policy in question from one which covered irrecoverable loss of use of a hand or arm

caused by either accident or disease and occuring either while at work or otherwise, to a provision to the effect that the policy covered only members who suffered:

(1) "An accident occurring while working at our trade or while on duty for the District Lodge, the State Lodge, (or) the Subordinate Lodge."

(2) "An occupational disease resulting from working at our trade, or while on duty for the District Lodge, the State Lodge, the Subordinate Lodge, or the International Brotherhood."

It is insisted that the defendant accepted premiums from plaintiff from 1943 until time of the accident with knowledge that he was not working at the trade of boiler-maker, or for the lodge or brotherhood. And it is argued that, since there was no reduction in the premium for the decrease in benefits, nor any notice to plaintiff of the restrictions, or reduction of his coverage, the Union had no right or authority to pass resolutions which would enable the defendant to alter, vary or change its written contract with the plaintiff so as to wholly deprive him of his right to disability benefits under the said policy.

Learned counsel for the plaintiff quotes 38 Am. Jur. p. 459 to the effect that, despite an express reservation of the right to amend the by-laws of a mutual benefit society, there are certain limitations upon the right to bind a member by such an amendment. It is said,

"In addition to those limitations upon the general power to amend, such amendments must be reasonable and must not impair vested rights. Furthermore, a society cannot avail itself of its reserved power of amendment as a means of repudiating its just obligations, or thereby so alter the terms of its

contracts of membership as practically to destroy their value.'' 38 Am. Jur. 459.

38 Am. Jur. pp. 460-461, sec. 24, is also quoted to the effect that, even though there is an express reservation of power of amendment to any contract, nevertheless, this does not permit an association to deprive the members of vested rights by such an amendment.

While we agree with the principles thus enunciated, we do not believe that they are controlling in the case at bar.

Counsel for defendant states that no Tennessee case has been found involving a group insurance policy issued to a trade union and that this is, apparently, a case of first impression in this state.

It is also pointed out that this case is distinguishable from those cases involving group policies for fraternal benefit associations of which there are a number, yet, there are two factors that the courts generally consider in deciding such cases, which factors are equally applicable to the present case. They are (1) the reasonableness of the amendment to the policy, and (2) whether it affects vested rights.

It is to be noted that the amendment to the by-laws involved here was enacted in 1949, whereas the injury to the plaintiff complained of occurred in 1953. Therefore, under the terms of the policy and the certificate issued to the plaintiff, we are of opinion that he did not have any vested rights under said certificate at the time of the change in the by-laws.

The Master Group Policy involved in this case provides on its face that its interpretation is to be governed by the laws of Kansas.

An investigation of the cases that have been cited indicate that the decisions in that state are in accord with the principles hereinabove mentioned.

In Kirk v. Fraternal Aid Association, 95 Kan. 707, 149 P. 400, it is held that a fraternal aid society had the right to amend its by-laws changing the old-age benefits to accrue to a member under its certificate.

Counsel for plaintiff cited Hart v. Life & Annuity Ass'n, 86 Kan. 318, 120 P. 363, but the Kirk case, supra, distinguishes the Hart case by pointing out that the certificate in the Hart case had been fully paid up before there was any change in the by-laws governing that certificate, while in the Kirk case, the change referred to old-age benefits not yet acrued.

Thus, the Kansas Courts seem to adhere to the doctrine that changes in benefits are permissible provided they are reasonable and do not affect vested rights.

There seems to be no reported case in Tennessee involving a group policy issued to a labor union. It is pointed out, however, that in Clement v. Clement, 113 Tenn. 40, 81 S. W. 1249, the Supreme Court, speaking through Mr. Justice Wilkes, held that an amendment to the by-laws of the Knights of Pythias, reducing the amountof death benefit payable to the member's beneficiary in case of suicide of the insured member, was reasonable, valid and enforceable, stating among other things, 113 Tenn. at page 48, 81 S. W. at page 1251: "We are of the opinion that this by-law entered into the certificate in controversy, and became a part of the contract between the parties."

In Hazlewood v. Railroad Employees' Mutual Relief Society, 166 Tenn. 556, 64 S. W. (2d) 15, it is held that the power reserved by a mutual benefit society to amend its by-laws does not authorize it to decrease the benefits to which a member is entitled by the terms of his contract.

In the case at bar, the contract is the Master Policy and certain articles of the Constitution and By-laws of the Union. Hence, we think that since, on the face of the certificate issued to the plaintiff, it states that it was issued pursuant to Article XII of the Constitution and By-laws of the Union as they were then in force, or, "As they may hereafter be amended," the Hazelwood case is not authority for the position of plaintiff herein.

The case of Dyer v. Occidental Life Insurance Co., 9 Cir., 182 F. (2d) 127, 129, 17 A. L. R. (2d) 923, is the only case that counsel or this Court have been able to find which deals with a group insurance policy taken out by a union for the benefit of its members.

In the Dyer case the court observed, "Oregon law governs but neither party has found any decision in Oregon or elsewhere which dealt directly with the precise question before us."

The opinion continues,

"Group insurance policies entered into between insurance companies and labor unions for the benefit of the members are relatively new in our economic history. Although familiar landmarks in established contract and insurance law give some aid in resolving new issues like this one which inevitably arise from time to time, we prefer to guard against a too-strict application of old rules and concepts which were evolved to resolve yesterday's controversies—rules

which may fail to consider and allow for new elements and circumstances. The law still retains its fluid and viable character.''

Another statement of the Court in the Dyer case and which is applicable to the case at bar is as follows, 182 F. (2d) at page 130, 17 A. L. R. (2d) at page 926:

"He derived the benefit of the group insurance plan solely by virtue of his membership in the union. The union had the power to create those insurance benefits in the first instance, and it also had the right to delineate reasonable conditions under which the benefits could be gained.''

''We agree with the trial court that the amendment to the by-laws made the designation of appellant as beneficiary invalid. She had no vested interest in the policy at the time of the enactment of the restriction, because the right to change beneficaries was reserved in the policy.'' 182 F. (2d) at page 130, 17 A. L. R. (2d) at page 927.

■ We are satisfied that these principles are applicable in the case at bar and that the change in the by-laws of a union was such as to deprive the plaintiff of his coverage under Article III (b) of the certificate of insurance.

■ Undoubtedly it is true that the right to amend the by-laws so as to adversely affect the rights of policyholders is subject, as hereinabove stated, to the limitations (1) of not adversely affecting vested rights under the policy, and (2) of reasonableness.

As heretofore indicated, it does not appear that the amendment in question deprived plaintiff of any vested

rights such as, for example, accrued benefits under a claim for disability payments because of sickness or accident that occurred before the effective date of the amendment.

On the question of reasonableness, it is to be remembered that the certificate (Pl's. Ex. A) contained provisions, under Sec. I, for death benefits that graduated upward from $333.33 during the first year in force, to $1,000 after being in force more than two years.

Under Sec. II death from occupational accident graduated from $666.66 during the first year to $2,000 after two years.

These benefits were not affected by the questioned amendment, and plaintiff must be held to have elected to continue his membership in the union, with incidental insurance benefits, after the amendments became effective in diminishing his possible future benefits under Sec. III of the Certificate and under the Master Policy.

It results that the assignments of error are overruled and the judgment of the trial Court is affirmed.

Affirmed.

Felts, P. J. (Middle Section), and Hickerson, JJ., concur.