**STATE, ex rel. TITLER, Plaintiff, v. BROTHERHOOD OF RAILROAD TRAINMEN et, Defendants.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24880. Decided July 27, 1959.

William H. Corrigan, for plaintiff.

Ray T. Miller, Wayland K. Sullivan, for defendants Brotherhood of Railroad Trainmen et al.

Ben C. Green, Dan W. Duffy, for defendant Brotherhood of Railroad Trainmen Insurance Dept., Inc.

Wm. A. Welty, for defendant W. J. Weil.

(Judges of the Ninth District sitting by designation in the Eighth District.)

## OPINION

By HUNSICKER, J.

Clyde Marshall Titler, a member of the Brotherhood of Railroad Trainmen, herein called "Brotherhood," and a holder of policies of insurance in the Brotherhood of Railroad Trainmen Insurance Depart-

ment, Inc., herein called "Insurance Department," filed this original action in mandamus against the Brotherhood and the Insurance Department, and others, to compel the defendants "to call and hold a convention * * * for the election of officers * * *."

Mr. Titler alleges: that the Brotherhood and the Insurance Department, under the terms of its constitution and the laws of Ohio, are required to hold a convention for the election of officers, and the transaction of other business, every four years; that the last convention of these bodies was held at Miami Beach, Florida, on August 30 to October 8, 1954; and that, by means of a referendum vote of the membership, the 1958 convention was, by the president and board of directors, unlawfully postponed until 1962.

On June 14, 1956, the Board of Directors of the Brotherhood adopted a proposal to conduct a referendum of the membership and of the subordinate lodges, to determine whether they desired to hold a convention. The result of the vote showed an overwhelming number of both members and lodges casting their ballots to postpone the convention of 1958 until the year 1962.

On October 18, 1956, after a meeting of the Board of Directors of the Brotherhood, a circular (the official publication of the Brotherhood) was sent to all members, including Mr. Titler, which read, in part, as follows:

"The following for your information and instruction:

"Brotherhood members vote to postpone 1958 convention.

"* * *

"Thus the instructions of the Board of Directors issued at meeting held on June 14, 1956, to spread a referendum ballot have been carried out, and the membership has decreed that the 1958 convention of the Brotherhood of Railroad Trainmen and the Brotherhood of Railroad Trainmen Insurance Department, Inc., shall be postponed for a period of four years, and it is hereby so declared."

On January 28, 1957, Mr. Titler wrote a letter to W. J. Weil, General Secretary and Treasurer of the Brotherhood, and a defendant herein, protesting the postponement of the convention, and stating that it was his desire to appeal to the Board of Directors of the Brotherhood from the decision of the president announcing the postponement of the convention.

Thereafter, on January 31, 1957, W. P. Kennedy, as president of the Brotherhood, sent the following letter to Mr. Titler:

"Dear Sir and Brother:

"This will acknowledge your letter of January 28 to Brother W. J. Weil advising that it is your desire to appeal to the Board of Directors from the decision of the President announcing the postponement of the convention which was scheduled to be held in 1958. "It was not by decision of the undersigned that the convention has been postponed. As I am sure you must know, it was by action of the Board of Directors that the proposal to postpone was referred to a referendum of the membership of the Brotherhood. In so far as your lodge is concerned, a vote of fifty-one to nine in favor of postponement was returned. In referring the question to our members, the Board gave full consideration to all of

the provisions of our law which might be involved, and an appeal such as submitted by you would, in effect, be an appeal from the action of the Board of Directors to the same board, which obviously would not be in order.

"Under the circumstances, it would avail nothing to appeal and your appeal cannot be recognized.

"Fraternally yours,
"(signed)    W. P. Kennedy
"President."

In January, 1958, a circular was sent to all members of the Brotherhood, which said that, in view of the overwhelming approval by the membership, as reported in the circular of instructions for October, 1956, Mr. Kennedy, as president of the Brotherhood, had announced on January 7, 1958, the postponement of the 1958 convention.

No protest was made by any member after the January, 1958, circular was published.

Thereafter, on April 8, 1959, this action in mandamus was filed.

The problem, as concerns the Brotherhood, is whether, under its constitution, there can be a postponement of the convention, and, if not, whether an action in mandamus lies to compel the calling of such convention.

The problem, with reference to the Insurance Department, is somewhat different. The Insurance Department is a fraternal benefit society, organized and existing under the insurance laws of the state of Ohio. It was organized solely for the mutual benefit of the members of the Brotherhood and certain of their dependents.

Under Rule 39 of the Insurance Department, all of the provisions of the constitution of the Brotherhood, not inconsistent with the insurance rules, shall apply to and govern the rights of the holders of certificates of insurance. The Insurance Department is in all respects a division of the Brotherhood. If the holder of an insurance certificate ceases to be a member of the Brotherhood, his insurance coverage expires, except that one who is expelled under charges may retain his insurance.

In the constitution of the Brotherhood is a Section 4, which says:

"The Grand Lodge shall meet quadrenially in the city to be selected by the Board of Directors, and which in the judgment of that Board shall be most practical and economical for the holding of such meeting."

In **Chapter 3921 R. C.**, concerning fraternal benefit societies, §3921.03 **R. C.**, says, in part, that any society operating on the lodge system has a representative form of government when "the meetings of the supreme or governing body and the election of officers, representatives, or delegates are held at least once in four years."

Thus it would seem, at first blush, that the Brotherhood was required to hold a quadrenial convention in order to comply with its constitution and with the law of Ohio. The penalty which may be imposed by the state of Ohio for failure to hold its quadrenial convention is loss of authority to conduct its insurance division. This is a present threat to the Insurance Department herein. There is, however, one other section in **Chapter 3921 R. C.**, which may relieve this society from

complying with §3921.03 R. C. The section to which we refer is §3921.40 R. C., which says in its pertinent part:

"Secs. 3921.01 to 3921.45, inclusive, R. C., do not apply to any of the following:

"* * *

"(D) Grand or subordinant lodges of societies which limit their membership to any one hazardous occupation;

"* * *

"No society, which is exempted under this section from §§3921.01 to 3921. 45, inclusive, R. C., shall give or allow, or promise to give or allow, to any person any compensation for procuring new members."

We do not believe that the portion of the above statute which prohibits a fraternal benefit society from paying compensation for procuring new members is important in the decision of the controversy herein. It is an admitted fact that the Brotherhood pays some compensation to agents who sell their certificates of insurance, but, by the terms of the statutes governing fraternal benefit societies, a penalty for such acts, if any, is not imposed by removing the exemption set out in paragraph "(D)" of §3921.40 R. C. If any action is to be taken for the admitted act of paying solicitors to procure new members, such action lies in the licensing authority of the state of Ohio.

We then come to the question posed by paragraph D, supra. Is the membership of the Brotherhood limited to one hazardous occupation?

While it may be true that pushers of buttons and pullers of levers belong to the society as well as others in equally sedentary work, nevertheless, they are all occupied, or, according to the testimony, were originally occupied, in conducting the business of operating a railroad.

There are not many decided cases involving this direct question, but the courts in many jurisdictions have defined "hazardous business" and "hazardous occupation" within the meaning of workmen's compensation laws. Thus, in McCabe v. Brooklyn Heights Rd. Co., 162 N. Y. S. 741, at page 742, a street surface railroad is said to be engaged in a "hazardous business;" while a claim adjuster of a railroad was not engaged in "hazardous employment." In re Brown, 159 N. Y. S. 1047. The opinions of jurisdictions outside of Ohio are in such great conflict that no general rule can be stated.

The Ohio case cited to us by counsel, State, ex rel. Sheets, Atty. Genl., v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 68 Oh St 9, says, at page 41:

"The most of the work of an employe of a railroad company is hazardous, and frequent injuries are sustained * * *."

In the case of Lake Shore & Michigan Southern Ry. Co. v. Benson, Admr., 85 Oh St 215, at page 221, the court said:

"Railroading at its best is necessarily a dangerous and hazardous employment * * *."

We, too, think that railroading is a hazardous employment. We therefore determine that the Brotherhood herein is not bound by the terms of §3921.03 R. C., by reason of the exemption contained in §3921.40 (D) R. C.

We shall pass now to a discussion of the problem presented by the constitution of the Brotherhood, and the question whether the action of mandamus is an appropriate remedy in this case.

The testimony of Mr. Kennedy, president of the Brotherhood, was in great part an effort to rationalize the postponement of the 1958 convention. The bases of the claimed right to such postponement was precedent, cost of the convention, and the referendum vote of the lodges and members.

The answer of the Brotherhood says, among other things, that:

(1) Mr. Titler is not a proper party to these proceedings; his petition does not state a cause of action;

(2) He has not exhausted his remedies within the Brotherhood;

(3) He has not properly perfected his appeal as provided by the laws of the Brotherhood;

(4) He is guilty of laches by allowing more than two years to elapse after the referendum vote before filing suit; and

(5) He comes into court with unclean hands.

The balance of the answer, and the portion marked "third defense," is an attempt to rationalize the postponement of the 1958 convention.

There is no provision or method set out in this constitution whereby a convention may be postponed. There are methods set out in the constitution of the Brotherhood whereby a special convention may be convened. There is no way set out in this constitution to end a convention except by the transaction of the business of the Brotherhood.

We began our discussion of this phase of the case with the premise that the 1958 convention, under the authority of the constitution of the Brotherhood, was required to be held. Should this court, under this petition, the defense, the evidence before it, and the law of the state of Ohio, order the convening of a convention?

The action of mandamus is defined in §2731.01 R. C., as follows:

"Mandamus is a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, **commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.**" (Emphasis ours.)

We have emphasized the words "commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." We believe that the disposition of this case depends upon the meaning of that part of the statutory definition of mandamus.

Before mandamus was given a statutory meaning, Wright, Judge, said, in the case of the **Universal Church v. Trustees of Section Twenty-nine, etc., 6 Ohio 446,** at page 447:

"The object of the remedy by mandamus is to compel public officers and **private individuals in matters relating to the public,** to perform their public duties."

Inasmuch as we have heretofore determined that the Insurance Department is exempt from the operation of the law which requires its supreme governing body to meet every four years, what matter relating to the general public is specifically enjoined by the law upon the Brotherhood?

We think there is no matter specifically enjoined by the law with

reference to a convention of a voluntary unincorporated association. The text writer in 35 O. Jur. 2d, **Mandamus,** Sec. 53, at **page 304,** without the citation of any Ohio authority, states the general rule, with respect to mandamus, as a remedy in cases such as we have herein, when he says: "Ordinarily, mandamus will not lie to regulate the internal affairs of unincorporated associations * * *." See also: 34 Am. Jur., Mandamus, Sec. 93, and 55 C. J. S., Mandamus, Sec. 238, and authorities cited in each text.

With respect to corporations for profit, the courts of Ohio have said that mandamus is not the proper proceeding by which to require the secretary of a corporation to call a meeting of its stockholders. State, ex rel. Ferencz, v. Unida Gold Mining Company, et al., 13 O. C. C. (N. S.) 100. But see annotation in 48 A. L. R. 2d 615, et seq.

Mandamus is not the proper remedy to compel a private corporation to issue a certificate of stock. **State, ex rel. v. Carpenter, et al., 51 Oh St 83.**

We do not find any Ohio case directly in point on the specific issue herein, and so we must search in other states for a solution of our problem.

The use of mandamus against voluntary associations has frequently been before the courts of other jurisdictions, usually in an attempt to compel the association to admit a person to membership.

In Ross v. Ebert, as Business Agent, etc., 275 Wis. 523, 82 N. W. 2d 315, the court refused mandamus to compel a union to accept a colored man as a member, saying that the labor union has a legal right to determine eligibility of those seeking membership. The decision therein was based upon an interpretation of the fair employment law of Wisconsin.

In Thorman v. International Alliance, etc., 320 P. 2d 494, the Supreme Court of California reached a contrary conclusion, but this decision was based upon a closed shop agreement which the union had with the employer; the court saying that the union could not maintain a closed union and a closed shop at the same time.

A case of considerable interest, because it sets out the majority rule, is Bailey v. Coleman (W. Va.), 16 S. E. 2d 918. The court there said:

"1. The writ of mandamus does not lie against an officer of an unincorporated voluntary association, where no statutory duty is sought to be enforced, and no public interest is involved."

See also: State, ex rel. Smith et al., v. Miers et al., 206 N. W. 236: Daniels v. Daniels, 160 N. Y. S. 2d 133. See also, the annotation on this subject in 137 A. L. R. 311, et seq.

The rule set out in the Bailey v. Coleman case, supra, is stated in Ferris, "Extraordinary Legal Remedies," at chapter XVII, Sec. 259, at page 319, as follows:

"It is well settled that, in the absence of any statutory duty, mandamus will not lie against a voluntary unincorporated association or society."

It is therefore the conclusion of this court that, since the statutory law of Ohio does not require the supreme governing body of the Insurance Department, the Brotherhood, to hold a convention every four

years, there is thus no law specifically enjoining a duty upon such Brotherhood to call its convention. The remedy by way of mandamus herein therefore does not lie, and the writ is denied.

DOYLE, PJ, STEVENS, J, concur.