**Louise BLOOM, as Administratrix of the Estate of John E. Bloom, Plaintiff and Respondent,**

v.

**NORTHERN PACIFIC BENEFICIAL ASSOCIATION and NPBA Hospitals, Incorporated, Defendants and Appellants.**

**Civ. No. 8706.**

Supreme Court of North Dakota.

Sept. 3, 1971.

As Revised on Denial of Rehearing
Dec. 20, 1971.

Thompson, Lundberg & Nodland, Bismarck, for plaintiff and respondent.

Conmy, Feste, DeMars & Bossart, Fargo, for defendants and appellants.

STRUTZ, Chief Justice, on reassignment.

The plaintiff, as the duly appointed and acting administratrix of the estate of John E. Bloom, deceased, brings this action to recover from the defendants certain benefits claimed due for medical, surgical, and hospital care rendered to the plaintiff's decedent which she claims are due under a hospital and doctor care contract which the deceased had with the defendants.

The facts, which were stipulated by the parties, disclose that John E. Bloom, for many years an employee of the Northern Pacific Railway Company, had retired from such employment prior to his death. After his death, the plaintiff was duly appointed and qualified as the administratrix of his estate. During the years of Bloom's employment with the Northern Pacific Railway Company, he had been a member of the defendant Northern Pacific Beneficial Association, hereinafter referred to merely as NPBA or the Association, and for many years had made payments to this defendant by way of payroll deductions, which payments entitled the deceased to certain medical and hospital benefits as provided for by the constitution and bylaws of the Association. The constitution and bylaws of NPBA were amended in 1963, and such amendments became effective on July 1, 1963, and remained in effect during all times thereafter pertinent to this lawsuit.

Prior to July 1, 1963, Article VIII of the NPBA constitution and bylaws provided:

"Treatment of members, either at Association hospitals or by Line Surgeons, will be limited to six months, except in cases where there is hope of full recovery by continued treatment, the President, on recommendation of the Chief Surgeon, may extend treatment for a longer period; but under no circumstances will the Association assume the care of cases which after six months' treatment are demonstrated to be incurable. It is further to be understood that this Association will not provide homes for aged and/or totally and permanently disabled

either at the various hospitals or in homes elsewhere."

As modified and amended, this rule, after July 1, 1963, designated as Rule 8 of the bylaws, provided, in part:

"A. *TIME LIMIT.* In-patient hospital care shall be limited to a total of 180 days for one condition. At the expiration of this benefit, the member shall not be eligible for in-patient hospital care for the same general condition until after the lapse of 36 months, except:—

"(1) Full Recovery. In cases where there is hope of full recovery by continued treatment, the President, on recommendation of the Chief Surgeon, may extend treatment for a longer period.

"(2) Incurable. Under no circumstances will the Association assume the care of cases which after six months' treatment are demonstrated to be incurable."

Rule 7–A(4) (b) of the bylaws of the Association, which became effective on July 1, 1963, reads:

"(b) Retired Members. In emergencies when hospitalization is necessary at non-Association hospitals on line, the Association will not assume expense beyond the period when the member can be safely moved to an NPBA Hospital, with a maximum of $675.00 for one period of confinement, and a maximum of $1,000.00 in any twelve month period for all expenses incurred at all line points."

It was stipulated that the plaintiff's decedent was treated at an NPBA hospital in St. Paul between February 24, 1958, and October 26, 1961, a total of sixty-four days, for a chest condition from which he subsequently died, and that NPBA paid for this hospitalization. It is further stipulated that between December 1, 1961, and May 10, 1963, the decedent was treated for the same chest condition for 121 days, making a total of 185 days of hospital treatment for which NPBA has paid. Thereafter, he received further hospitalization and medical treatment for such chest condition and for other conditions which the doctor testified "may or may not be attributed to the chest condition." The defendant NPBA asserts that everything that it owed to the deceased as a member of that Association, under the constitution and bylaws of NPBA, has been paid and that the further sum of $5,840.60 demanded by the plaintiff for hospitalization from May 11, 1963, to September 26, 1963, and $980 for hospitalization from December 13, 1963, to January 18, 1964, and for medical expenses for the same periods totaling $772, are not due for treatment for such member under the bylaws of NPBA.

The trial court found for the plaintiff for the total sum prayed for. It also awarded the plaintiff $1,212.94 for attorney fees under Section 26–09–15, North Dakota Century Code. The defendants have taken this appeal from the judgment entered against them and demand a trial de novo in this court.

The first issue facing us on this appeal is to determine whether the trial court had jurisdiction over the defendants. In attempting to make service upon the defendants, the plaintiff served the summons and complaint on the Insurance Commissioner of the State of North Dakota, in conformity with the provisions of Section 26–09–07, North Dakota Century Code. The plaintiff also served the registered agent of the Northern Pacific Railway Company in the State of North Dakota, and mailed a copy of the summons and complaint by certified mail to NPBA's home office in St. Paul, Minnesota.

Both of the defendants objected to the jurisdiction of the trial court and moved to dismiss the action for want of jurisdiction. The trial court denied the motions on the

ground that the defendants were conducting business "in the nature of insurance," and that service on the Insurance Commissioner, as provided in Section 26–09–07, therefore was valid.

■ Let us first examine the service on the defendant NPBA Hospitals. The record discloses that this defendant is a Minnesota corporation. It has no registered agent in the State of North Dakota. The record fails to show that this defendant has ever done any business in this State. Its business consists wholly in treating persons brought to its facilities located out of the State. It could not possibly be doing any type of business in North Dakota, much less be doing business in the nature of insurance. We hold, therefore, that service of process was not made on the defendant NPBA Hospitals and that, as to this defendant, the motion to dismiss the summons and complaint for lack of jurisdiction should have been granted, and that the trial court erred in denying the defendant's motion to dismiss.

■ The defendant NBPA also raises the issue of jurisdiction of the trial court. The record discloses that NPBA is an unincorporated association of employees of the Northern Pacific Railway Company, with principal offices in St. Paul. It has no registered agent in the State of North Dakota. We find from an examination of the constitution of NPBA the following:

"This organization shall be called the 'Northern Pacific Beneficial Association' and shall have for its object the medical, surgical and hospital care of its members."

While authority involving unincorporated benefit associations is limited, there is authority which holds that the particular society involved, under circumstances as we find them in this case, is considered an insurance company and that its contracts are insurance policies. In Clark v. Grand Lodge of Brotherhood of Railroad Trainmen, 328 Mo. 1084, 43 S.W.2d 404 (1931), the court said:

"Beneficiary associations not incorporated are of ancient origin, * * * Perhaps the most common enterprise which associations foster and carry on is that of mutual protection and relief in misfortune. This naturally takes the form of insurance."

We have examined the NPBA constitution and bylaws. These disclose that provision is made for such items as accidents, ambulance service, artificial eyes, artificial limbs, cardiovascular surgery, treatment of contagious diseases, drugs, emergency treatment, hospital care, injury benefits, medicines, and sick benefits as well as other items. It is clear that these provisions are in the nature of insurance and that the membership of NPBA so considered them. When the members made their monthly contributions to NPBA, they believed themselves entitled to the benefits provided by the Association.

Chapter 26–12, North Dakota Century Code, exempts many fraternal benefit societies from the application of the general insurance laws of this State. However, NPBA would not qualify for such exemption because it does not have a lodge system with a ritualistic form of work, as provided and defined in Sections 26–12–01 and 26–12–02, North Dakota Century Code.

Furthermore, NPBA would not come under the provisions of Chapter 26–12 because of Section 26–12–49, which reads:

"Nothing contained in this chapter shall affect or apply to:

* * * * * *

"3. Societies which admit to membership only persons engaged in one or more hazardous occupations in the same or similar lines of business;

* * * * * *

The State of Ohio has a statute which is very similar to that of North Dakota. In the case of State ex rel. Titler v. Brotherhood of Railroad Trainmen, Ohio App., 81 Ohio Law Abst. 453, 160 N.E.2d 321 (1959), it was held that "railroading is a

hazardous employment," and thus came within the exception provided for in their law which says:

"Sections 3921.01 to 3921.45, inclusive, of the Revised Code, do not apply to any of the following:

\* \* \* \* \* \*

"(D) Grand or subordinate lodges of societies which limit their membership to any one hazardous occupation;

\* \* \* \* \* \*

Under Rule 4(f), North Dakota Rules of Civil Procedure, when a statute of this State provides for service of a summons, service shall be made in the manner prescribed by statute. Section 26–09–07, North Dakota Century Code, provides for service of summons upon unauthorized foreign or alien insurers through the North Dakota Commissioner of Insurance. We find that NPBA is conducting business with residents of the State of North Dakota, which business is in the nature of insurance. It is not exempted from the general insurance laws of this State. Inasmuch as it has not complied with the conditions imposed upon foreign insurers, as set forth in Section 26–09–01, North Dakota Century Code, it may, for the purpose of service, be deemed an unauthorized insurer. Therefore, service of process through the North Dakota Insurance Commissioner, as provided by law, was a proper method of securing jurisdiction in the case at bar.

Since we find that jurisdiction was obtained by service on the Insurance Commissioner, it will be unnecessary for us to comment on the other methods of service attempted by the plaintiff.

We now will consider the plaintiff's claim on its merits.

The undisputed evidence shows that the defendant NPBA did pay for the decedent's hospital and medical expenses for 185 days, or six months, for treatment of his chest condition. That, asserts the defendant NPBA, discharged and satisfied all of its obligations to Bloom as a member of the Association. This is disputed by the plaintiff, who says that the sums paid as demanded in her complaint are due under the decedent's membership in the defendant Association.

Up to July 1, 1963, when the amendments to Article VIII, now Rule 8 of the NPBA bylaws, became effective, the bylaws relating to treatment of members of the Association provided that such treatment, either at Association hospitals or by line surgeons, was limited to six months for any illness, except that where there was hope of full recovery by continued treatment of such member, the care could be extended for a longer period. That article further provided that under no circumstances would the Association assume care of cases which, after six months of treatment, were found to be incurable. The NPBA now contends that Bloom had received six months' care by May 10, 1963, which was prior to the effective date of the amendment of Article VIII. The defendant further contends that since Bloom was treated during such time for a disease which was found to be incurable, he received the full benefits to which he was entitled by reason of his membership in NPBA, regardless of whether the provisions of this article, before or after the amendment, are found to be applicable. Prior to such amendment, a member was entitled to treatment limited to six months, except in cases where there was hope of full recovery by continued treatment, which never was true in Bloom's case. NPBA asserts that he was at all times treated for emphysema, a pulmonary insufficiency which was incurable. If the amendment to Article VIII is found to be applicable, the defendant asserts that it still was liable for treating Bloom for a total of only 180 days for one condition, except where there might be a hope of full recovery by continued treatment, since Article VIII provided that "under no circumstances will the Association assume the care of cases which, after six months' treatment, are demonstrated to be incurable."

The defendant further asserts that, in any event, under the provisions of Rule

7–A(4) (b), Bloom was entitled to not more than $1,000 of treatment per year for an illness not incurable.

The plaintiff advances several propositions in answer to these contentions by NPBA. First, it is urged that the NPBA's constitution and bylaws in effect at the time of Bloom's retirement and at the time he became ill are controlling, and that the amendments effective July 1, 1963, cannot be applied in his case. The plaintiff further contends that the provision for six months' limitation, as it existed before the amendment, is vague and that any vagueness or uncertainty in the contract will be interpreted against the party causing such uncertainty. Sec. 9–07–19, N.D. C.C. The plaintiff then says that this provision, as it existed prior to the 1963 amendment, must be interpreted to mean that a member entering the hospital could receive six months of consecutive treatment, and that if he were released for a few days he thereafter would become entitled to another six months of treatment even if it was for the same illness and regardless of whether such illness was incurable or not. Plaintiff points out that Bloom never was hospitalized for any period of time exceeding six months consecutively, and that all of the periods of his treatment therefore should be paid for by the NPBA under his membership coverage in that Association.

■ As we read and interpret the defendant's constitution and bylaws in force prior to July 1, 1963, NPBA owed to the plaintiff, as one of its members, up to six months' treatment for any number of periods of hospitalization for any number of illnesses. Thus, for example, if a member should be involved in an accident and suffer broken bones, he would be entitled to treatment for up to six months for such injuries. If he thereafter should suffer from another and different illness, he would be entitled to treatment for up to six months for that illness. But where an illness for which such member is treated be found to be incurable, under no circumstances would the NPBA be responsible for more than six months of treatment for such incurable disease. If the member could avoid the six months' limitation of treatment for an incurable illness, as suggested by the plaintiff, by using the simple maneuver of going home for a few days and then being eligible for another six months of treatment for such incurable disease, the language of the bylaw in question would be absolutely meaningless.

Thus the important issue in this case is: For how much, if any, of the total treatment which Bloom received after May 10, 1963, the date on which the defendant NPBA contends its liability for hospitalization and medical treatment terminated, is the defendant liable? Bloom was suffering from pulmonary insufficiency and emphysema, for which there is no known cure. It was this disease which finally caused his death. Under the provisions of his membership in NPBA, he was entitled to a total of just six months of treatment for this incurable disease. However, he was entitled to further treatment for any other disease which was separate and apart from his pulmonary insufficiency. The record shows that a portion of the treatment for which the plaintiff claims reimbursement was for other conditions. It was stipulated by the parties that Dr. Klosterman, line surgeon for the defendant, would testify that Bloom's treatment up to approximately June 15, 1963, was solely for the primary chest condition stated in the death certificate, but that in his opinion the hospitalization from June 15, 1963, to September 26, 1963, was not required solely for the chest condition but was required in part for the chest condition and in part for other conditions.

Thus Bloom was receiving treatment during a portion of this period for a disease for which he was entitled to hospitalization under his policy and also for an incurable disease for which the defendant NPBA was obligated to pay for six months, which six months' care expired on May 10, 1963. In other words, Bloom was receiving treat-

ment from June 15, 1963, for a disease for which he was entitled to hospitalization and also for an incurable disease for which he no longer was entitled to receive treatment. The defendant asserts that the plaintiff had the burden of showing for just what portion of the hospitalization Bloom was entitled to receive treatment, and having failed to do so, she is not entitled to recover for any of the treatment Bloom received during this period.

We believe, however, that the burden was on the defendant to prove that the plaintiff was not entitled to recover for any treatment Bloom received during this period. The record discloses that during the time in question the plaintiff's decedent did receive treatment for an illness for which we hold he was entitled to receive treatment. Dr. Klosterman, line surgeon for the defendant, the doctor who treated the plaintiff's decedent, had the necessary information in his records from which he could have determined the exact amount of treatment required for the illness for which Bloom was entitled to receive treatment. The defendant, however, failed to furnish this information to the trial court, and therefore it will be presumed that the hospitalization for the entire period was necessary for the illness for which Bloom was entitled to receive treatment. We hold that the burden of proof to provide evidence to show that Bloom was not entitled to receive further treatment for any part of this period was upon the defendant. In Miller v. Industrial Hospital Association, 183 Neb. 704, 163 N.W.2d 891 (1969), the court said:

> "Provisions in an insurance policy limiting recovery under the policy are generally defensive in character and must be pleaded and proved by the insurer." (Par. 2 of Syllabus.)

See also Couch on Insurance 2d, Volume 19, Section 79:391, at page 679, where the author says:

> "The insurer has the burden of proving that hospitalization of the insured was required for a matter which is ex-

cepted from the coverage of the policy.
. . . ."

Here, although Dr. Klosterman had the information, the defendant did not establish that the hospitalization in question was required for treatment of pulmonary insufficiency, which was an incurable disease for which Bloom had received the maximum treatment available under the provisions of the policy, and that Bloom was not entitled to further coverage. The defendant having failed to prove that hospitalization for any portion of this period was only for the disease for which Bloom no longer was entitled to treatment, the plaintiff is entitled to recover for treatment Bloom received during this period.

The record also discloses that hospitalization and medical treatment for the period from December 13, 1963, to January 18, 1964, was principally for hematuria, which was a discharge of blood into the urine, probably caused by a kidney tumor. Therefore, the plaintiff's decedent would be entitled to receive treatment for such period in such amount as was provided by the policy.

NPBA contends that since Bloom was a retired member, recovery is limited by the amendment to the Association's bylaws. In reviewing the applicability of bylaw amendments, courts generally will look, first, to the reasonableness of the amendment and, second, to whether the amendment affects vested rights. See Lee v. Occidental Life Insurance Co., 40 Tenn. App. 265, 291 S.W.2d 273 (1956).

In the case before us, we are not concerned so much with the reasonableness of the amendments to the bylaws as we are with whether such amendments may have affected any vested rights of Bloom. In 44 C.J.S. Insurance § 303b, page 1223, we read:

> " . . . The rights of insured under his contract cannot be affected, destroyed, or enlarged by a subsequent change in the articles of incorporation

or association, or in the by-laws, rules, or regulations, either by amendment or by the adoption of new provisions, unless he assents thereto, or unless it is provided in the contract that he shall be bound by reasonable amendments or provisions subsequently adopted; and this rule applies, even though insured was chargeable with knowledge that the by-laws existing when his policy was issued were subject to alteration."

In the case of Lee v. Occidental Life Insurance Co., *supra*, the court cites Hazelwood v. Railroad Employees' Mutual Relief Society, 166 Tenn. 556, 64 S.W.2d 15, where the court held:

". . . the power reserved by a mutual benefit society to amend its by-laws does not authorize it to decrease the benefits to which a member is entitled by the terms of his contract."

Although we are not able to point as precedent to a similar fact situation in North Dakota, we believe that the ruling of the Tennessee court in the above action, holding that bylaw amendments made three months prior to Hazelwood's death, which would have reduced his death benefits, were not valid.

■ The amendment in the case before us became effective on July 1, 1963. At that time, Bloom was in the hospital. When Bloom retired, the amendment was not in effect. In fact, it was not in effect even at the time he entered the hospital, on March 31, 1963, nor was it in effect when Bloom began to receive treatment on June 15, 1963. The idea that the defendant can change the rules and limit Bloom's recovery under the bylaws while Bloom was in the hospital certainly would be contrary to all standards of fairness. Therefore, we hold that, at a minimum, a member's right to recover benefits vests under his existing contract at the time he enters a hospital or begins to receive medical treatment for a condition or conditions for which recovery is allowed by his contract. Amendments to bylaws which become effective subsequent to the beginning of such treatment, which would limit the insured's right to recover benefits, will not be allowed to affect the member's right to recovery of benefits to which he was entitled when such medical treatment was commenced. The Beneficial Association cannot, by changing its bylaws, reduce benefits to a member who had already qualified for and was receiving benefits under the old bylaws. We so hold, notwithstanding a provision in the bylaws which states that if any question shall arise in the construction of the bylaws, the determination of such question shall be made solely by the president of the Association. The authority given to the president by such provision is not an arbitrary power but is a legal discretion, and his determination must be based on reason.

Thus we hold that the recovery of benefits for treatment between June 15, 1963, and September 26, 1963, are to be controlled by the bylaws in effect prior to July 1, 1963.

By the same reasoning, however, we hold that the plaintiff's right to recover for Bloom's hospital and medical treatment for the period from December 13, 1963, to January 18, 1964, is to be governed by the bylaws which, as amended, became effective on July 1, 1963.

Bloom's treatment for the period from December 13, 1963, to January 18, 1964, was primarily for hematuria. Since treatment for pulmonary insufficiency during this period of hospitalization was incidental to the treatment for hematuria, the plaintiff will be permitted to recover for Bloom's hospitalization and medical treatment for this period. The treatment, however, was received at a non-Association hospital, and, since the parties stipulated that during this period Bloom could not safely be moved to an NPBA hospital, the provisions of Rule 7–A(4) (b) of the Association's amended bylaws, as quoted above, are applicable. Thus the plaintiff's maximum recovery of benefits for this period would be $675.

The final issue to be determined on this appeal is whether the trial court erred in allowing attorney fees in the sum of $1,-212.94 under the provisions of Section 26-09-15 of the North Dakota Century Code. That section reads:

"In any action against an unauthorized foreign or alien insurer upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business therein, if the insurer has failed for thirty days after demand prior to the commencement of the action to make payment in accordance with the terms of the contract, and it appears to the court that such refusal was vexatious and without reasonable cause, the court may allow to the plaintiff a reasonable attorney fee and include such fee in any judgment that may be rendered in such action. Such fee shall not exceed twelve and one-half percent of the amount which the court or jury finds the plaintiff is entitled to recover against the insurer, but in no event shall such fee be less than twenty-five dollars. Failure of an insurer to defend any such action shall be deemed prima facie evidence that its failure to make payment was vexatious and without reasonable cause."

We find that the defendant is not liable under the provisions of this statute, even though we have found that the defendant is engaged in a business in the nature of insurance. We find that the defendant's action in denying the plaintiff's claims was not vexatious or without reasonable cause. *Webster's Third New International Dictionary* defines "vexatious" as "lacking justification and intending to harass." Here, there is an open question on the issue of whether NPBA was liable for certain payments, and the refusal of the defendant to make such payments cannot

be held to be vexatious where there is no showing that the defendant's actions have been without justification and with the intent to harass. Under the circumstances disclosed by this record, the defendant had every right to contest the issue of liability without subjecting itself to any penalty which the law might provide for a vexatious refusal to pay. Volz v. Travelers Ins. Co., 161 S.W.2d 985 (K.C.C.A., Mo., 1942).

It is only when a matter is presented which shows that a party's action had no reasonable or probable justification and that there was no reasonable or probable basis in fact for its action that such refusal to pay may be said to be vexatious.

There is no evidence in this case that the claims advanced by the defendant NPBA were not made in good faith. In fact, the expenses of hospitalization from May 10, 1963, to June 15, 1963, are by our decision held to be not covered by Bloom's contract. Since some of the plaintiff's claims have been disallowed on this appeal, the defendant's refusal to pay the plaintiff's demands cannot be held to be vexatious. The trial court's allowance of attorney fees in favor of the plaintiff under the provisions of Section 26-09-15 of the North Dakota Century Code therefore was error, and its order in that regard is reversed.

For reasons discussed in this opinion, we hold that the plaintiff is entitled to recover from the defendant for treatment which Bloom received for the periods mentioned. It is further held that the plaintiff is not entitled to recover attorney fees under the provisions of Section 26-09-15, North Dakota Century Code. As thus modified, the judgment against the defendant NPBA is affirmed.

TEIGEN, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.